## Hershberger *versus* The City of. Pittsburgh.

1. A city can create a valid municipal lien for improving a street only when the improvement is made in pursuance of law; and the property owner can only be made subject to it when the power conferred on municipal authorities has been legally exercised.

2. On a *scire facias sur* a municipal lien for damages for the grading of a street under the Act of January 6th, 1864, P. L., 1131, it is competent for the defendant to show that he had no notice of the proceedings and was thereby deprived of the opportunity of making his defense before the viewers or in court. In such case the confirmation of the report of the viewers does not conclude him; he must make his defence on the *scire facias*.

3. Although the report of the viewers assessing the damage against a property owner for the grading of a street under the Act of January 6th, 1864, P. L., 1131, has been confirmed by the court, if he prove that he had no notice as required by the said Act, he may show on the *scire facias sur* the municipal lien filed thereon, that the damages were occasioned by grading elsewhere than on the street, for the grading of which the city had authority to levy the assessment, and thus defeat a recovery.

4. The Act of March 20th, 1873, P. L., 327, cannot be construed to validate an invalid assessment for damages for street improvments as to a property owner who had no notice of the proceedings, and thus never had an opportunity to make his defence before the viewers. or in court.

November 17th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 2, of *Allegheny county:* Of October Term, 1886, No. 52.

This was a *scire facias sur* municipal lien, brought by the city of Pittsburgh against Thomas P. Hershberger to recover damages caused by the grading of Carson street in said city. The defendant pleaded no lien, never indebted, and as a special plea that the damage for which the assessment for which the lien in this case was filed, was caused by grading a strip of land not Carson street, and that this was without the authority of an Ordinance or of any law.

On the trial before MAGEE, J., the defendant made the following offers of evidence:

Defendant offers in evidence the petition upon which the Ordinance was based, to be followed by proof that at the time there was a located, opened street which had been used for years known as Carson street, extending from the Monongahela bridge to Saw Mill Run.

Objected to. Objection sustained, and bill sealed for the defendant. (First assignment of error.)

[Hershberger v. The City of Pittsburgh]

Defendant's counsel proposes to prove by the witness on the stand (C. E. Owens) that there was a commission elected by the property owners on Carson street, under the Act of 1870, and that the witness and his father were the engineers of that commission, for the grading and paving of Carson street, under the Ordinance which has been offered in evidence; that at that time and prior to the passage of this Ordinance, there was a well recognized and well known street extending from the Monongahela bridge down to Chestnut street, known as Carson street; that the commission, acting under the Ordinance, graded and paved partly on said street, and partly altogether to one side of it, a distance of from fifty to one hundred feet from the street and extending in length about one thousand feet; and that the grading and paving of Carson street was not done on the street known as Carson street at the time of the passage of this Ordinance. And to further prove, by this and other witnesses, that there was no Ordinance ever passed by the councils of the city of Pittsburgh changing the location of Carson street, and that a large part of the damages claimed for here were caused by the grading that was done outside of the line of Carson street, as established at the time of the passage of the Ordinance. This for the purpose of showing that this grading was done without authority of law, and that the city of Pittsburgh had no right to collect any damages on the property benefited, or other property, whether benefited or not. Also offers in evidence the Act of April 2d, 1870, known as the Penn Avenue Act: Pamphlet Laws of 1870, p. 796 to 801.

Objected to—

1. That the liens filed in this case, upon which writ of *scire facias* had been issued, were filed under the Act of January 6th, 1864, and that Act, already offered in evidence, confers the power upon the city to regulate the grading, and that the report of the Board of Viewers, approved by the Court of Quarter Sessions of Allegheny county, follows the Act, and is based upon the benefit derived to these various properties by the grade.

2. That, under the Acts of Assembly already offered, and under which the assessments were made, and for which these liens have been filed, the final approval of the action of the Board of Viewers making the assessments, by the Councils of the city of Pittsburgh, and by the Court of Quarter Sessions of Allegheny county, is conclusive upon the matter which is proposed to be proven in the offer, and is, therefore, incompetent and irrelevant.

Objection sustained and bill sealed for defendant. (Second assignment of error.)

[Hershberger *v.* The City of Pittsburgh.]

Defendants' counsel proposes to prove by the witness on the stand (C. E. Owens) and others, that at the time of the passage of the Ordinance of November 25th, 1872, entitled "An Ordinance authorizing the grading, paving and curbing of Carson street, from the end of the Monongahela bridge to Chestnut street, and Main street from Carson street to division line of thirty-fourth and thirty-sixth wards, Chestnut street from Carson street to division line of thirty-fourth and thirty-sixth wards, and River road from Chestunt street to city line, and the election of commissioners for that purpose," and prior thereto, Carson street, from the Monongahela bridge to Chestnut street, was, and had been for a long time, a well defined and much traveled public street and thoroughfare, having numerous dwelling houses and other buildings erected up to the line of said street, on each side thereof, and was well known and recognized as Carson street. That no Ordinance of the city of Pittsburgh was ever passed or adopted, changing the location of said Carson street, nor was the location of the said street ever legally or lawfully changed. That the grading aforesaid, although claimed to have been done under and by virtue of the Ordinances aforesaid, was not done on Carson street, or for the improvement thereof, but was done in the construction of a street or roadway over and along a strip of land at some distance from Carson street, and which was not authorized by any Ordinance to be constructed or graded. This for the purpose of showing that the grading of that portion of the street was illegal, and a trespass, and that the defendants are not liable to be assessed for any damages caused thereby.

And further, that the damages, for the payment of which these liens are sought to be enforced, was caused by the grading done on that portion of the street lying outside of Carson street; and, further, that the properties assessed in these cases are situated at a distance of from half a mile to a mile from this portion of the street, the grading of which caused the damages claimed in these cases.

Plaintiff's counsel renews the objection made to the previous offer.

Objection sustained and bill sealed for the defendant. (Third assignment of error.)

Defendants' counsel offers to prove by the witness on the stand, that the damages, for the payment of which the assessments sued upon in these cases were made, were caused by the grading of a strip of land which was not a part of Carson street, Main street, Chestnut street or the River road, and which was not authorized by any Ordinance to be graded, for the purpose of showing that the assessment on the property of

[Hershberger v. The City of Pittsburgh.]

the defendants for the payment of such damages is illegal and without authority of law.

Plaintiff's counsel renews the objection made to the previous offer.

Objection sustained and bill sealed for the defendant. (Fourth assignment of error.)

Defendants' counsel further proposes to prove by the witness on the stand and others, that the damages, for the payment of which the assessments sued upon in these cases were made, was caused by the construction of a high embankment as approaches to the public bridge over and across the Monongahela river, connecting together two large divisions of the city of Pittsburgh. That said embankment was not necessary and would not have been made except as approaches to the public bridge aforesaid, and was not for the local benefit of the neighboring property, but for the general public benefit, and that the property of the defendants, on which the assessments in these cases were made, is situated at a great distance from said embankment and derives no greater or other benefit from the said bridge or its approaches than that which is common to the whole city. This for the purpose of showing that the assessment in these cases is illegal.

Plaintiff's counsel renews the objections made to the previous offer, with the further objection that the power to establish the grades and re-grades of the city of Pittsburgh is a matter of pure discretion with the councils of the city, and the grade having been established, it is conclusive upon all parties.

Objection sustained and bill sealed for defendants. (Fifth assignment of error.)

Defendant's counsel proposes to prove that there is no assessment made to pay these damages, upon any property on Carson street. That all assessments made for the payment of these damages were made upon property at a distance from Carson street and more than a mile distant from any property claimed to have been damaged by such grade, which assessed property, if benefited at all, is not benefited nearly as much as the property along said street; for the purpose of showing that the assessments are illegal.

Plaintiff's counsel renews the objection previously made.

Objection sustained and bill sealed for defendant. (Sixth assignment of error.)

Defendant's counsel further proposes to prove that the defendants in these cases were never served with any notice of any proceedings before the board of viewers or before the Court of Quarter Sessions and, therefore, they are not concluded by the decision of the board of viewers and the proceedings in the Court of Quarter Sessions.

5 Amerman—6

[Hershberger *v.* The City of Pittsburgh.]

Plaintiff's counsel renews the objections previously made.

Objection sustained and bill sealed for the defendant. (Seventh assignment of error.)

Defendant's counsel repeats the second offer, which he made in connection with the last offer.

Objected to as before.   (Eighth assignment of error.)

Objection sustained and bill sealed for the defendant.

Defendant's counsel offers to prove that the property of all of these parties assessed was located in the Thirty-sixth ward of the city of Pittsburgh, formerly the borough of Temperanceville, fronting upon streets which had been graded and paved under special laws, confined to the borough of Temperanceville, and that they had no notice of the proceedings, or that their property was assessed to pay these damages.

Plaintiff's counsel renews the previous objection.

Objection sustained and bill sealed for the defendant, (Ninth assignment of error.)

Defendant's counsel offer, also, report of Board of Viewers on the damages and benefits caused by the grading of Carson street between the points designated, approved by final decree of the Court of Quarter Sessions of Allegheny county, at No. 40, March Sessions, 1876.

Objected to, that the plan shows that the assessment of damages was for grading which was not done on streets directed to be graded.   Objection overruled and bill sealed. (Tenth assignment of error.)

Under the pleadings and evidence the court erred in allowing the verdict and entering judgment for the plaintiff. (Eleventh assignment of error.)

Verdict for the plaintiff in the sum of $74.63 and judgment thereon, whereupon the defendant took this writ and filed the above assignments of error.

*W. W. Thomson* (*T. H. Baird Patterson* with him,) for plaintiff in error.

The provisions of the Act of January 6th, 1864, P. L., 1131, require that notice shall be given to the property holders.

That such notice had been given was not alleged in the claim filed, nor proved on the trial, and if it had been it would only have been *prima facie* evidence of the fact, and might be rebutted.

The proceedings before the viewers were of a judicial character, and in Old *v.* Erie City, 29 P. F. Smith, 384, it was held that in such cases "it is a fundamental rule that all such proceedings, when they affect the rights or property of the citizens are nugatory, if unaccompanied by reasonable notice." And if it should be held that the provisions of the statute were

directory merely, the defendants, not having had notice would not be concluded by them: Pittsburg v. Coursin, 24 P. F. Smith, 400; Watson v. Sewickley, 10 Norris, 330; Stuart v. Palmer, 74 N. Y., 183; Neeld's Road, 1 Barr 353; Boyer's Road, 1 Wr., 257; Road in Plum Creek Township, 33 Pitts. L. J., 219.

A city can create a valid lien for a street improvement, only when the improvement is made in pursuance of law, and in the mode prescribed by the statute, or ordinance, strictly followed. Pittsburgh v. Walters, 19 P. F. Smith, 365; West Pennsylvania R. R. Co. v. Allegheny City, 11 Norris, 100.

In this last case it was held that the city could not recover the cost of a retaining wall which it had built partly beyond the line of the street; that it was a trespasser.

The right of a city to improve a street is confined to the limits of the street, as established. A power to grade does not authorize a change of lines. White v. Com'th, 37 Legal Int., 354; West Penna. R. R. Co. v. Allegheny City, 11 Norris, 100; Watson v. Philadelphia, 12 Norris, 111; Philadelphia v. Arrett, 8 Phila. R., 41.

The defence of want of authority in the city, or its failure to conform to the requirements of the Acts giving it authority, may be set up on the trial of the scire facias: Breed v. Allegheny, 4 Norris, 214; Wilson v. Allegheny, 29 P. F. Smith, 272.

It was said by Judge SHARSWOOD in Hammett v. Philadelphia, 15 P. F. Smith, 157, that "local assessments can only be constitutional when imposed to pay for local improvements, clearly conferring special benefits on the properties assessed, and to the extent of those benefits. They cannot be imposed when the improvement is either expressed, or appears to be, for general public benefit," and to this, it was said by Justice WOODWARD in Craig v. Philadelphia, 8 Norris, 270: "It may be added that they can not be so imposed when it is proved to be for the public benefit, without advantage to local properties." The same principle is affirmed in Washington avenue, 19 P. F. Smith, 364; Seely v. Pittsburgh, 1 Norris, 360; in re Saw Mill Run Bridge, 4 Norris, 163, and Appeal of the Protestant Orphan Asylum, 1 Amerman, 135. In these cases it is held that to sustain a local assessment, it must appear affirmatively that the improvement is for a local benefit, and in several of them special acts authorizing local assessments for an improvement of a public character, have been held unconstitutional and void.

These cases show, that on the facts offered to be proven, the assessments were unconstitutional and void, and such as neither the councils nor board of viewers had power to make. But it was objected that we were concluded by the confirmation of

Hershberger *v.* The City of Pitsburgh.

the report of the board of viewers. In Breed *v.* Allegheny City, 4 Norris, 214, and Wilson *v.* Allegheny City, 29 P. F. Smith, it was held that the facts showing the want of power in the councils and board of viewers to make such assessments, might be proven on the trial of the *scire facias* on the lien filed after final confirmation of the report of the board of viewers. This was also decided in Craig *v.* Philadelphia, 8 Norris, 269, referred to above, and Scranton *v.* Pennsylvania Coal Co., 9 Out., 445.

It is also argued that the Act of 1873, before quoted, makes the confirmation conclusive, and the evidence offered incompetent.

To give the Act this effect is to give to the legislature power to validate unconstitutional Acts, which it could not authorize by a direct enactment.

*W, C. Moreland,* City Attorney.

Two questions are raised under the assignments of error, namely :

1st.—Were the defendants entitled to prove want of notice of the proceedings, and,

2d.—Had they shown want of notice, would such have vacated or vitiated the lien?

No pretence is made in the affidavit of defence that notice had not been given to each party entitled thereto. It was and is undoubtedly true that each property holder assessed had knowledge of the action taken by the councils, the board of viewers and the courts. The lien was *prima facie* evidence of notice.

But suppose we assume want of notice, the collection can not be defeated. See Act of March 14th, 1872, P. L. 360; Act of March 20th, 1873, P. L., 327; Act of January 6th, 1864 P. L. 1131.

The statutory requirement as to notice is not mandatory but merely directory : Olds *v.* Erie City, 29 P. F. S., 383; Pittsburgh *v.* Coursin, 21 P. F. S., 400; Bladen *v.* Philadelphia, 10 P. F. S., 466; Magee *v.* The Commonwealth, 10 Wright, 388.

Mr. Justice CLARK delivered the opinion of the court, February 7th, 1887.

This is a *scire facias* upon a municipal lien, entered in the Court of Common Pleas, No. 2, of Allegheny county, upon an assessment for benefits arising from the grading of Carson street in the city of Pittsburgh. The improvements were made under the Act known as the "Penn Avenue Act," but the assessment of the damages sustained and the benefits

accrued from the grading of the streets was made under the special Act of 6th January 1864 (P. L. 1131), and pursuant to an ordinance of 29th March, 1875. Portions only of the record offered in evidence are printed, but from the undisputed statements of counsel found in the paper books it appears, that appeals were taken from the report of the viewers by those sustaining damages, to the Court of Quarter Sessions, and jury trials were had in several cases in the Common Pleas. These trials largely increased the amount of the damages to be assessed upon property supposed to be benefited by the improvement, and on the 10th December, 1881, the Court of Quarter Sessions referred the report back to the board of viewers, with directions to assess upon the properties benefited, if possible, the excess of damages awarded in the several cases, above the amount found by the report, and in case they should fail to find benefits to such an amount, then against the city of Pittsburgh. The viewers thereupon extended their assessments and included the property of the defendants. The viewers, having returned their report, exceptions were filed by several parties, and such proceedings were subsequently had thereon, that on 3d March, 1883, it was ordered and adjudged by the court, that the report be set aside as to all the exceptants, "and to all persons and parties" who had accepted what is called the "Compromise Ordinance," and the report was referred back to the viewers, to assess upon the city of Pittsburgh the amount of benefits which had been assessed against them; the report was confirmed absolutely however as to all other persons. As to the nature of the compromise Ordinance we are not informed, but the appellant alleges that he was not within its provisions.

At the trial the defendant made formal offers to prove, that he had no notice whatever of the proceedings before the board of viewers, or of the proceedings in the Court of Quarter Sessions, and upon that ground contended that he was not concluded by the return of either tribunal; and further, by way of defence offered to show that the grading, for which the damages were assessed, was done under an Ordinance, expressly for the grading, paving and curbing of Carson street, from the end of the Monongahela bridge to Chestnut street, &c., &c., whereas the same was in fact not done on Carson street, but in the construction of a roadway upon a strip of land some distance from the well-known location of Carson street, and of an embankment for an approach to the Monongahela bridge, which last was for the general public benefit, and not to the local advantage of property holders along the route of the streets covered by the ordinance.

The seventh section of the Act of 1864, which prescribes

[Hershberger *v.* The City of Pittsburgh.]

the duties of the viewers provides, that they shall conform to the duties of viewers appointed in the opening of new streets, as prescribed in the third section of the same Act, excepting that where the viewers are appointed *after* the work is commenced, they need not give the five days' notice by hand bills, &c.; they are required to appoint a convenient time and place and give notice thereof to all parties, &c., when they will hear their allegations and evidence on the subject, &c., &c. This provision for previous notice of the meeting of the board of viewers, to hear the proofs and allegations of the parties, in the absence of any other, would, we think, be of a mandatory nature; the giving of the notice is a preliminary requisite to the making of the assessment. It is assumed that notice to and hearing of the parties is in some sense essential to the making of a just assessment; the giving of the notice would therefore be of the essence of the thing required. This provision of the statute was intended, we think, to impose a limitation upon the jurisdiction and power of the viewers. The general rule is thus stated in Bladen *v.* Phila., 10 P. F. S., 466:—" Where the words are affirmative and relate to the manner in which power or jurisdiction, vested in a public officer or body, is to be exercised and not to the limits of the power or jurisdiction itself, they may and often have been construed to be directory." Thus in the seventh section of the same Act, the recording regulator is required to give notice, by publication for ten days in two daily papers, of assessments made by him for grading, paving and macadamizing, but as this plainly relates to the manner in which he, as a public officer, shall exercise a jurisdiction already vested in him, it was held to be directory: Pittsburgh *v.* Coursin, 24 P. F. S., 400. A statute directing the mode of procedure by a public officer is in general deemed directory; a precise compliance is not essential to the validity of the proceedings unless so declared.

But if the provision in question were directory only, the defendant was entitled to the notice which the law directed, and whilst without that the assessment would not be wholly invalid, he would certainly not be concluded by it, he might set up any valid defence upon the *scire facias:* Pittsburgh *v.* Coursin, *supra.*

By the first section of the Act, March 14th, 1872, however, it is provided, that " no assessment for the opening, widening, grading, paving and curbing any street, lane or alley, or for the construction of any sewer or sidewalk in the city of Pittsburgh, heretofore made, or which may hereafter be made, shall be defeated for want of any notice required by the several Acts of Assembly and ordinances relating thereto, or for

[Hersberger v. The City of Pittsburgh.]

any other informality or irregularities in said proceedings; provided that this Act shall not be construed to prevent any defence showing want of authority in said city or its officers to do said work, or any other matter or thing affecting the merits of the claim; and in any case in which notice has not been given as required by law, said city shall not be authorized to collect any interest or cost which may have accrued before the owner shall have received actual notice of said proceedings." The purpose of this provision doubtless was to sweep away mere technical and frivolous objections to the payment of just assessments, and to facilitate the collection of claims in relief of the city; but the Act, as we have seen, expressly excepts out of its provisions the right to set up any defence, showing want of authority in the city or its officers to do the work, or any other matter or thing, affecting the merits of the claim, and this as we understand the case now under consideration, was the precise character of defence which the defendants' proposed to make. If Hershberger had notice, however, as directed by law, his objection to the assessment against him should have been made before the viewers, or in the Quarter Sessions, and not on the *scire facias:* Hutchinson v. Pittsburgh, 22 P. F. S., 320.

Upon the face of the proceedings, in view of the provisions of the Act 1872, as to notice, the court would appear to have had jurisdiction of the subject matter; applying the maxim *omnia præsumuntur rite esse acta*, it would be presumed *prima facie*, we think, that the provisions of the law had been substantially followed; in order, therefore, that the defendant might avail himself of a defence upon the merits, it was undoubtedly competent for him to show want of notice.

Do the facts set forth in the several offers or in any of them constitute a meritorious defence? It is alleged in the offer that at the time the proceedings were instituted, Carson street was a well known and well defined street, and that although the Ordinance was for the grading, paving and curbing of Carson street, the improvement with which the defendant is charged, was not made within the limits of that street, but upon other ground outside those limits. It must be conceded that a city cannot change the lines of or straighten a street excepting in the way prescribed by law; that an Ordinance, to grade, pave and curb a street, gives no authority to change the established lines, and that a city can create a valid municipal lien for improving a street, only when the improvement is made in pursuance of law: West Pennsylvania Railroad Company v. City of Allegheny, 11 Norris, 100. The defendant can be made subject only to a legal obligation when the power

[Bell's Appeal.]

conferreu on tne municipal authorities has been legally exercised: Fell *v.* Phila., 31 P. F. S., 75.

Nor do we think that the seventh section of the Act of 20th March, 1873, (P. L., 327,) can be construed to validate such an assessment. The legislature certainly never intended that Act to conclude parties, who never had any notice of the proceedings against them, and never had their day in court; it was intended, of course, that those only should be concluded who had the notice required by law, were made parties to the proceedings, and thus had an opportunity for vindicating their rights.

If the grading was not done within the limits of Carson street, pursuant to the order of councils, but in the opening of a roadway or other ground outside of those limits, the city had no authority to levy the assessments. If the defendant had no notice, he had no opportunity to take defence before the viewers or in court; in such case the confirmation of the report of the viewers amounts to nothing as respects the defendant, he may make his defence on the *scire facias*: Wilson *v.* City of Allegheny, 29 P. F. S., 272; Breed *v.* City of Allegheny, 4 Norris, 214.

The judgment is reversed, and a *venire facias de novo* awarded.