## In re Land in Mifflin Borough

*Paul S. Lehman* and *J. Howard Neely*, for exceptants.
*H. Brown Fry*, contra.

TROUTMAN, P. J., July 25, 1950.—The Borough of Mifflin, by this proceeding, seeks to acquire title to a parcel of land owned by Isabella Parker heirs under the power of eminent domain. On June 7, 1949, the borough presented its petition to the Court of Common Pleas of Juniata County, reciting, inter alia, the passage of an ordinance by the Borough of Mifflin enacting:

"That the said Borough of Mifflin establish and provide a public park and playground, and that there be taken for said purpose all that certain contiguous tract or parcel of vacant land situate partly in the Borough of Mifflin and partly in the adjacent Township of Milford, Juniata County, Pa. . . ."

A description of the land is set forth in the petition and in a copy of the ordinance affixed thereto and is as follows:

554

"Beginning at a point in the said Borough of Mifflin, being the intersection of the right of way of Pennsylvania Traffic Route No. 35 (or Pennsylvania Legislative Route No. 193) and the right of way of the main line of the Pennsylvania Railroad Company and being at or near the southeastern corner of the overhead bridge that carries the aforesaid Route No. 35 over the said main line of the Pennsylvania Railroad Company; thence by the said right of way of the Pennsylvania Railroad Co. in a southerly direction 1400 feet, more or less, to the low water mark of the Juniata River; thence by the low water mark of the Juniata River in a northeasterly direction an undetermined distance to a point where a projection in an easterly direction of the south side of Main Street in said Borough would intersect the low water mark of the Juniata River; thence by said projection approximately 50 feet westwardly to the northeast corner of lot designated as No. 16 in the General Plan of the Borough of Mifflin; thence in a southerly direction and along lots designated as No. 16, 43, 44, 70 and 71 in the aforesaid designated plan and along the eastern termini of Tuscarora and Path Streets and three intervening alleys approximately 722 feet to a point, being the northeastern corner of lot designated as No. 14 in Parker's Addition No. 1 to the said Borough of Mifflin; thence continuing in a southerly direction and along lots designated as No. 14, 15 and 42 in the aforesaid Addition No. 1, and along the eastern termini of Parker and Wilson Streets and an intervening alley 454 feet to the southeastern corner of the eastern terminus of Wilson Street; thence along the southern side of Wilson Street an undetermined distance in a westerly direction to the northeastern corner of lot designated as No. 49 in Parker's Addition No. 2 to the said Borough of Mifflin; thence in a southerly direction and along lots designated as No. 49, 48 and 47 in the aforesaid addition No. 2 150 feet

to the southeastern corner of lot No. 47; thence in a westerly direction along lot No. 47 and the southern terminus of Juniata Street; thence along the western side of Juniata Street an undetermined distance to the intersection of the aforesaid Pennsylvania Traffic Route No. 35 and the western side of Juniata Street; thence along the southern side of the legal right of way of the aforesaid Pennsylvania Traffic Route No. 35 an undetermined distance to a point, the place of beginning, containing 10 acres, be the same more or less."

The petition also sets forth in paragraph 3 that,

"A map of the land acquired, taken and appropriated, and a copy of the ordinance acquiring and taking the land herein for a public park and playground for the Borough of Mifflin is hereto annexed and made a part thereof. A particular description of the land taken being shown on said map as well as the boundary lines thereof."

On June 7, 1949, the court appointed three members of the Board of Viewers of Juniata County to perform the duties prayed for in the petition.

The viewers met for the purpose of the discharge of the duties of their appointment on September 16, 1949, at which time the testimony of certain witnesses was taken and subsequently filed. The viewers filed their report on October 3, 1949, reciting due notice of time and place of view and concluding that "after viewing the premises mentioned and described . . . and after hearing and considering the testimony of the witnesses . . . do award the sum of Two Thousand ($2,000.00) Dollars . . . as damages to be paid by the Borough of Mifflin". On November 2, 1949, the protestant owners, by their attorneys, filed 12 exceptions to the report of viewers. The case is before the court on these exceptions. The protestant owners have entered a de bene esse appearance at all times.

The first four exceptions are as follows:

"1. The Ordinance appropriating and condemning the real estate of the Parker heirs is inaccurate and misleading in describing the amount of the land condemned, to wit, 'containing 10 acres, be the same more or less'.

"2. The petition and map thereto attached nullify the proceedings and cannot support a finding because they contain no adequate information of the amount of land condemned.

"3. The testimony of the plaintiff's witnesses as to the value of the land taken is worthless because they admit they do not know the amount of the land condemned.

"4. The report of the viewers is inadequate in law because it does not state the amount of the land condemned, nor any draft nor survey from which the same can be ascertained, nor can it support a finding, nor does it contain mandatory requirements of the Act of Assembly in such case made and provided."

The map of the land to be acquired, filed with the petition for appointment of viewers, referred to in paragraph 3 as hereinabove quoted, is marked and designated in the lower right hand corner of said map "RIGHT OF WAY AND TRACK MAP PENNSYL-VANIA RAILROAD".

The map shows, of course, in detail the right-of-way of the Pennsylvania Railroad Company. The land to be acquired by the borough is designated on the map by a blue line retraced in red. It gives no description by courses and distances of the land in question, except along the right-of-way of the Pennsylvania Railroad Company and no acreage is given. The petition for appointment of viewers gives no more exact information as to courses and distances.

The court is of the opinion that the description or designation of the land in question is insufficient to support a view and a taking under the power of eminent

domain. This map was never formally introduced in evidence or identified by any proper person or witnesses.

"We are to remember, then, that a document purporting to be a map, picture, or diagram, is, for evidential purposes simply *nothing, except so far as it has a human being's credit to support it*. It is mere waste paper,—testimonial nonentity. It speaks to us no more than a stick or a stone. It can of itself tell us no more as to the existence of the thing portrayed upon it than can a tree or an ox. We must somehow put a testimonial human being behind it (as it were) before it can be treated as having any testimonial standing in court. It is *somebody's testimony*,—or it is nothing. It may, sometimes, to be sure, not be offered as a source of evidence, but only as a document whose existence and tenor are material in the substantive law applicable to the case,—as where, on a prosecution for stealing a map or in ejecment for land conveyed by deed containing a map, the map is to be used irrespective of the correctness of the drawing; here we do not believe anything because the map represents it. But whenever such a document is offered as proving *a thing to be as therein represented,* then it is offered testimonially, and it *must be associated with a testifier*": Wigmore on Evidence, vol. III, sec. 790, p. 174.

Taken without more, the map may be proper evidence of the "right-of-way" of the Pennsylvania Railroad Company, but the court cannot accept it as showing collateral facts and purported boundaries.

" 'It has never been supposed that if in such a survey the surveyor should go on to state collateral facts, or declarations of the parties, or other matters not within the scope of his proper official functions, he could thereby make them evidence as between third persons' ": Wigmore on Evidence, vol. V, sec. 1665, p. 657, quoting Story, J., in Ellicott v. Pearl, 10 Pet. 412, 441,

9 L. Ed. 475. See also Salmon v. Rauce, 3 S. & R. 311, 315.

The Borough Code under which this proceeding is instituted requires that a correct plan of the property shall be furnished the board of viewers: Act of July 10, 1947, P. L. 1621, sec. 43, 53 PS §13.428.

The record shows no such plan was furnished the viewers, and the court holds that the map filed with the petition for the appointment of viewers, hereinabove referred to, does not answer the specifications of the act of assembly. The description of the land as set forth in the petition, without more, would be insufficient to support a view even in the absence of any statutory requirements.

The viewers might have rectified the omission by proceeding to survey the land themselves and make such a survey a part of their return. This is a normal and necessary function of viewers in road cases.

"In the present case, this defect in the petition was not supplied or cured by the report of viewers. . . . They reported no draft. . . . It is the policy of the law, that the records of the Quarter Sessions shall exhibit the public highways within the County. For this reason, drafts of every new road are required, as well as description by courses and distances. The same reason demands, that where a road or part of a road be vacated, the record should contain a description and draft of the part vacated. Such is the requirement of the Act of Assembly, and such is the uniform practice. The proceeedings must, therefore, be set aside": Road in Ross Twp., 36 Pa. 87. See also Yardley Borough, 22 Pa. C. C. 179; Chartiers Twp. Road, 48 Pa. 314.

The duty to prepare or secure a plan is also imposed upon the viewers by The Borough Code, as amended July 10, 1947, P. L. 1621, sec. 43, 53 PS §13.470, which provides:

"After making whatever changes are necessary, the viewers, or a majority thereof, shall report to the court, showing the damages and benefits allowed and assessed in each case, and file therewith a plan to be prepared or secured by the viewers showing the improvement, the lands or properties taken, injured, or destroyed, and the lands or properties benefited."

"Though the municipality has the right to condemn for such public purposes, its authority is to be exercised as legislatively directed. A duly enacted ordinance defines the limits of the appropriation, and it is upon the basis of the taking, as so described, the damages must be assessed: Hershberger v. Pittsburgh, 115 Pa. 78. That the land may be clearly designated, requirement is made that a map be prepared by the viewers, which becomes a matter of record, and in the making of improvements the municipality may not invade the property of the abutting owner beyond the lines fixed: White v. Borough of McKeesport, 101 Pa. 394; Western Penna. Railway v. Allegheny, 92 Pa. 100. In the case of the appropriation for public use by corporations, to whom the power of eminent domain has been delegated, maps indicating the extent of the taking are required (Lance's App., 55 Pa. 16; Johnston v. D. L. & W. R. R. Co., 245 Pa. 338), and there is like reason for demanding that the city show, by proper descriptions, the property which it intends to condemn, for it is only by an examination of the authorizing ordinance, or accompanying map, that the amount of the injury can be adequately determined by viewers": A. H. Reid Creamery & Dairy Supply Company v. Philadelphia, 274 Pa. 251, 253.

No such plan was filed by the viewers with their return. The county surveyor of Juniata County was one of the members of the board of viewers which should have facilitated meeting the requirements of the act of assembly.

The result of this omission on the part of the petitioners has more than an academic bearing on the case. It became apparent at the hearing before the viewers that the witnesses did not know the quantum of the land although they based their opinion primarily on its value per acre. One of petitioner's witnesses estimated the area of land involved at 10 acres, while another estimated the area at 12.34 acres. These were the only witnesses called by petitioners. A witness for the protestant, who was a registered engineer, estimated the area at 17.25 acres and another, who was a real estate agent, estimated the area at 17.02 acres.

The description of the land, sought to be acquired by the borough, being imperfect, uncertain and inexact from the inception of these proceedings, the court is constrained to declare the borough ordinance, enacted under date of May 5, 1949, appropriating said land invalid and set aside all subsequent proceedings. The power of eminent domain is a soverign power and must be exercised within the strict limits of constitutional and statutory law. To hold otherwise might lead to eventual confiscation.

The Borough Code imposes the costs of a proceeding, including court costs, except the compensation of viewers, upon the borough. It is so decreed in this case.

In accordance with the foregoing, the court makes the following

### Decree

And, now, July 25, 1950, the ordinance of the Borough of Mifflin enacted under date of May 5, 1949, purporting to appropriate land of the heirs of Isabella Parker situate partly in the Borough of Mifflin and partly in the Township of Milford, Juniata County, Pa., containing 10 acres, more or less, is hereby declared invalid and all subsequent proceedings are set aside. The costs of this proceeding, except compensation of viewers, be paid by the Borough of Mifflin.