# Haddock et al. *versus* Commonwealth of Pennsylvania ex rel. G. M. Williams, Inspector of Mines.

1. Section 3 of the Act of March 3d 1870 (P. L. 3) does not prohibit the mining of coal for market in those seams of a coal mine which have two openings or outlets, as required by the Act, at the same time that work is being carried on by not more than twenty men, in another seam for the purpose of making a gangway from said last-mentioned seam to a second opening or outlet.

2. A coal mine, containing five strata or seams of coal, was operated through a shaft extending from the surface through the various seams of coal ; and the entrance to the shaft was covered by the breaker. In the first and third seams fifty or more miners were employed, mining coal for market. The second and fourth seams were not being worked. In the fifth seam a number of miners, not exceeding twenty, were engaged in working a gangway to connect with a second opening, which had not been completed to that seam, although said second opening or outlet was already connected with the first and third seams, in accordance with the requirements of the Act of March 3d 1870 (P. L. 3). Under sections three and five of said Act, the Inspector of Mines filed a bill in equity to restrain the working of the first and third seams, at the same time that work was being carried on to make a second opening or outlet in the fifth seam. A demurrer to said bill was overruled by the court below, and the injunction granted.

*Held* to be error, and that under the proviso to said third section, the work might be carried on as above stated.

April 9th 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Appeal from the Court of Common Pleas of *Luzerne county :* In equity : Of January Term 1882, No. 207.

This was an appeal from a decree of said court overruling the defendants' demurrer to a bill for an injunction filed by G. M. Williams, Inspector of Mines, against John C. Haddock, E. F. Stevens and George W. Shonk, to restrain the defendants from employing or permitting persons to work in certain seams of their coal mine, at the same time that work was being carried on in a certain other seam ; and continuing an injunction granted against the same. The bill, after setting out that the complainant was the inspector of coal mines duly appointed under the Act of March 3d 1870, and that the defendants were the owners of the mine in question, continued as follows :

" Third. The ventilation in said mine is produced by a suction fan placed over the second opening or air way, so that the pure air in said mine is drawn down through said breaker and the shaft beneath it.

" Fourth. The defendant here employed in said colliery to wit : In the first and third seams of the same, a large number of persons, to the number of fifty and more, for the purpose of

[Haddock *v*. Commonwealth.]

mining coal for market, and at the same time the said defendants have employed in said colliery, to wit: in the fifth seam of the same a large number of persons, in number not exceeding twenty, for the purpose of working a gangway or gangways to connect with a second opening, which has not yet been completed to said seam.

" Fifth. There are in communication with the first and third seams of coal worked in such coal mine two outlets, as required by law, but that there is no opening or other outlet or means of communication with the fifth seam of coal except the shaft above mentioned, used for hoisting coal and over the top of which the breaker is erected.

".Sixth. In the opinion of your orator the mining of coal for market from the upper seams during the time that the men are employed in the lower seam, to which there is but one opening, greatly increases the hazard and danger to those employed in said lower seam, and this hazard is mainly caused and increased by the location of the breaker over the top of the shaft.

" Seventh. Your orator is advised and believes that such working is in contravention of the 3d section of the Act of 3d March 1870, and the true intent and meaning of the same."

The material part of said section is as follows :

" It shall not be lawful for the owner or agent of any anthracite coal mine or colliery, worked by or through a shaft or ·slope, to employ any person in working within such coal mine or colliery, or to permit any person to be in such coal mine or colliery for the purpose of working therein, unless there are in communication with every seam or stratum of coal worked in such coal mine or colliery, for the time being at work, at least two shafts or slopes or outlets . . . . by which . . . . distinct means of ingress or egress are always available to the persons employed, etc. . . . Provided, . . . . this section shall not apply to opening a new coal mine or colliery, nor to any working, for the purpose of making a communication between two or more shafts, slopes or outlets, so long as not more than twenty persons are employed at any one time in the said new mine or working."

In accordance with the prayer of the bill, an injunction was granted prohibiting the defendants from employing, or permitting persons to be in the first and third seams of coal in said mine for the purpose of working therein, at the same time that any person or persons were at work in the fifth seam.

·The defendants demurred to the whole bill as stating no cause for equitable relief ; but the court entered a decree overruling the demurrer and continuing the injunction, RICE, P. J., delivering the opinion.

[Haddock *v.* Commonwealth.]

Whereupon the defendants took this appeal, assigning for error the decree of the court.

The facts of the case are stated more at length in the opinion of the Supreme Court.

*George R. Bedford* (with whom were *E. P. & J. V. Darling*), for appellants.—The appellants were clearly within the proviso of the Act. They were simply making a second opening for a vein before beginning to work it, and employing for that purpose only the number of men allowed by the statute. In each of the veins which were being worked there were two shafts or outlets as required by the Act, but the court below restrained the working of those veins, while the work for a new opening in the other veins was being pushed, or in other words, held, that the working for a second opening was unlawful, while any other part of the mine was in operation. Such a construction would result in serious losses to mine owners, and is not in conformity with the natural and obvious meaning of the words of the Act. The clause preceding the proviso, rendered unlawful the working of such mine, without two shafts or outlets, and the proviso exempted from this provision of the Act new mines or seams about to be opened.

*Thomas H. Atherton,* and *Allan H. Dickson,* for appellee. —In the enacting clause of the third section the whole subject of the protection of persons employed in working within the coal mines is being considered. In the proviso the subject matter treated is merely as to men employed in the necessary work of opening a new mine or seam. The enacting clause treats of persons generally employed within the mine. The proviso treats only of certain particular men employed for a special purpose. Hence the proviso cannot be construed to embrace persons about which it does not profess to treat, viz: men employed generally in other seams besides the new one that is being opened. The enacting clause prohibited the employment of men in any coal mine unless there were two outlets always accessible to every seam for the time being at work. The proviso deals with a limited class of men and cannot be extended to a class not contemplated specifically within its subject and to whom the danger would be increased by such working and who would thereby be deprived for a time of two outlets always accessible in case of accident. Further, by no other construction can any sensible meaning be given to the words " for the time being at work." By our construction these words refer to this very case. They permit work in the upper seams having two outlets when there exists another seam not having two outlets, but in which no work or manual labor is being performed; but if the lower seam is " for the time

being at work," that is if manual labor is being performed there, then the prohibition is absolute.

Mr. Justice CLARK delivered the opinion of the court, October 1st 1883.

This case involves the proper construction of the third section of the Act of March 3rd 1870, entitled "An Act providing for the health and safety of persons employed in coal mines." P. L. p. 3.

The fifth section of the act referred to, provides that the proper court, on the application of the inspector of mines, "acting in the behalf of the Commonwealth, shall prohibit by injunction, or otherwise, the working of any mine, in which any person is employed in working, or is permitted to be for the purpose of working, in contravention of this Act."

This bill is preferred in the name of the Commonwealth, upon the relation of G. M. Williams, who is the inspector of mines for the middle district of Luzerne and Carbon counties ; the defendants are the owners and operators of an anthracite coal mine, known as "Dodson Shaft" in Plymouth township in Luzerne county in the said district.

The question arises upon the defendant's demurrer to the bill. The effect of the demurrer is to admit all the material allegations of the bill, and the inquiry presented in the issue thus formed is whether under the showing of the bill, upon a proper construction of the third section of March 3rd 1870, the plaintiff is entitled to the relief prayed for.

This Act of Assembly was passed, after the sad and memorable disaster, which occurred at the Avondale mine, on the sixth day of September 1869. That mine had but a single shaft, the hoisting shaft ; the brattice enclosing the air passage caught fire, from some cause unknown, and very soon the only entrance to, or means of exit from, the mine, was filled with burning timbers, fire and smoke. The breaker and buildings covering the shaft were entirely consumed, and one hundred and eight unfortunate miners instantly perished. This great public calamity and the investigation, which followed, revealed the fact, that the business of mining was so negligently conducted, that the lives of miners were constantly imperiled. Public sentiment demanded that this should be the subject of legislative provision and this statute embodies the action of the legislature thereon.

The third section comprises all the provisions of the Act, covering the question at issue, and is in the words and form following viz :—Section III. " That four months from and after the passage of this Act, it shall not be lawful for the owner, or agent, of any anthracite coal mine, or colliery, worked by or

[Haddock *v.* Commonwealth.]

through a shaft, or slope, to employ any person in working within such coal mine, or colliery, or to permit any person to be in such coal mine, or colliery, for the purpose of working therein, unless there are in communication with every seam, or stratum of coal, worked in such coal mine, or colliery, for the time being at work, at least two shafts or slopes, or outlets, separated by natural strata of not less than one hundred and fifty feet in breadth, by which shafts, slopes or outlets, distinct means of ingress and egress are always available to the persons employed in the coal mine or colliery; but it shall not be necessary for the two shafts, or outlets, to belong to the same coal mine, or colliery, if the persons therein employed have ready and available means of ingress and egress, by not less than two shafts, slopes, or outlets, one, or more of which, may belong to another coal mine or colliery, provided that a second opening can be had through coal; but if a tunnel or shaft will be required, for the additional opening, work upon the same shall commence immediately after the passage of this Act, and continue until its final completion, with not less than three shifts, in each twenty-four hours, and as many hands be employed as can be put to work with advantage, the inspector to be the judge as to the least number of hands engaged per shift; this section shall not apply to opening a new coal mine or colliery, nor to any working, for the purpose of making a communication between two or more shafts, slopes, or outlets so long as not more than twenty persons are employed, at any one time, in the said new mine or working."

The defendants operated this mine through a shaft, extending from the surface, through the various seams of coal; the shaft was surmounted by the coal breaker; a large wooden building used for hoisting coals and preparing it for market; there were five seams or strata of coal; in the first and third seams the defendants employed fifty or more persons, in the mining of coal for market; the second and fourth seams were not being worked, whether they were yet unopened or had been abandoned or exhausted does not appear; in the fifth seam a number of persons, not exceeding twenty, were employed in working a gangway or gangways to connect with a second opening, which had not yet been completed to that seam or stratum.

This second opening was in communication with the first and third seams but not with the fifth; it had not yet been completed to that point, and the working in the fifth seam was admittedly for the purpose of making that connection. There was no hoisting apparatus in this second opening. A ladder extended from the coal workings in the third seam to the surface; over it was a suction fan, and this fan being kept con-

[Haddock *v.* Commonwealth.]

stantly in motion the foul air of the mine was thus removed and pure air admitted to take its place through brattice of wood in the main shaft.

There were, therefore, in the event of an accident in the mine, in communication with the first and third seams two outlets or distinct means of escape as required by law, one by the "cages" up the main shaft, the other by the ladder in the air shaft; but there was no outlet or means of communication with the fifth seam, except the main shaft, nor could there be until the gangway at which the twenty men were engaged was completed to the point of connection.

It is not contended that the working in the fifth seam, with a single means of escape, for the purpose for which it was prosecuted, was unlawful, per se, but, that the operating of the first and third seams, simultaneously with the driving of the gangway, was in contravention of the statute. In other words, that the working of the first and third seams and the opening, at the same time, of the fifth, which had but one outlet, is exactly within the letter of the prohibition, whilst the proviso simply withdraws from the operation of that prohibition the opening of a new mine, or the driving of a gangway, that and no more. The prohibition arises, they say, not from the fact that there is another partially opened seam, connected with the same shaft, which has no second outlet, but the fact that there is another such seam, in the language of the statute "for the time being at work." The reasoning, in support of this view, certainly displays great ingenuity of counsel, but it involves such a refinement upon the language of the section, as we think was not in the minds of the legislature. The natural and obvious meaning of the words used in the entire section, we think, is to be taken, rather than such as only results from a subtle and adroit analysis of the prohibition, and the proviso, considered separately. To find the intention of the legislature we must read the different parts of a statute together, and, if there is a simple and apparent meaning in the whole, which stands out in bold relief we must adopt that rather than one which is forced, and the result of laborious reasoning. The phrase "for the time being at work" is clearly used to qualify and limit the seams or strata which are embraced in the prohibition and not the period of time, daily or otherwise, when the laborers are actually employed. The fifth seam was simply in course of preparation for working; whilst, it is true, a limited number of men were working there, it could scarcely be said that they were working the mine; they were removing coal from the gangway, not for the coal, but for the gangway, they were not working the seam, they were opening it for work.

[Haddock *v*. Commonwealth.]

We cannot believe that the prohibitory clause, if construed alone, would apply to the opening of a new coal mine, as it would of course be an utter impossibility, in sinking the first shaft, to have distinct means of ingress and egress by two shafts, and, there would be a like impossibility of distinct means of egress, in the case of making a first communication, between two or more shafts. The proviso was altogether unnecessary, indeed absurd, if its purpose was merely to except such acts from its provisions; this proviso was doubtless framed, in part, to exclude any possible ground of misinterpretation, and further, but principally we think, to limit the employment, in this more dangerous department of the work, to twenty men, as without the proviso there was necessarily no limit. The objects and purpose of the Act are thus extended by the proviso.

If, as the Act provides, this section does " not apply to any working for the purpose of making a communication between two or more shafts," how can it apply here? That was the exact purpose and character of the work in the fifth seam. The language is specific, plain and clear, its meaning is apparent and obvious.

If then the section does not apply to such work as was being done in the fifth seam, we have no power to grant the relief prayed for, whether that work is conducted alone, or in connection with the regular working of other seams. It is to be assumed that the legislature meant just what in the language of this Act is clearly expressed. The first and cardinal rule for construction of statutes is, that when the intent of the legislature is plainly expressed, it must prevail, that when the language of a statute is clear and unequivocal, without ambiguity or uncertainty we are to presume that it expresses the intent of the legislature, and no construction is necessary. It may be that the working of the first and third seams at the same time that the communication was being made in the fifth, increases the hazard and risk to those engaged in the work, but this is a matter for legislative action, we cannot make the law.

The decree in this case is therefore reversed, and the bill is dismissed at the cost of the appellees.