## IN RE COUNTY BRIDGE, NESCOPECK TOWNSHIP.

### CERTIORARI TO THE COURT OF QUARTER SESSIONS OF LUZERNE COUNTY.

Argued April 10, 1888—Decided May 7, 1888.

1. That the foreman of a grand jury reporting in favor of a county bridge, under the Luzerne county act of April 16, 1870, P. L. 1199, was one of the petitioners for the bridge, is a sufficient reason for setting aside the court's approval of the report, without limit as to time, if before the erection of the bridge.

2. Dubitatur: Whether orders of approval and confirmation of roads and bridges made in the routine work of the Quarter Sessions, without notice to the parties to be affected thereby, ought to be regarded as of the same degree of solemnity as judgments regularly entered after notice or on warrants of attorney: per WILLIAMS, J.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 446 January Term 1887, Sup. Ct.; court below, No. 188 April Term 1884, Q. S.

On November 19, 1881, a report of the grand jury of Luzerne county was filed, setting forth that upon the petitions from certain townships they had considered and recommended favorably, inter alia, the erection of a bridge across Nescopeck creek in Nescopeck township, at a point designated; that the amount proper to be expended thereon by the county of Lu-

zerne should not exceed the sum of $1,500, the abutments, piers and filling in of abutments to be built by the township of Nescopeck in which said bridge was situated, which report was the same day approved. The proceeding was under an act entitled " An act providing the manner in which county bridges shall be built by the county of Luzerne," approved April 16, 1870, P. L. 1199.

On May 14, 1884, upon the petition of certain citizens and taxpayers of the county of Luzerne praying that the approval by the court of said report, so far as relating to the proposed bridge in Nescopeck township, be stricken off, for the reason that it would be useless and unprofitable to have the said bridge built, a rule to show cause, etc., was granted. On May 26th, another petition of such citizens and taxpayers was presented, setting out as an additional reason for the granting of the prayer, that the township supervisors were about to build a bridge over the same creek. Depositions on the part of the petitioners were filed, showing that in the opinion of the witnesses the proposed county bridge was not necessary and that the building of it would be expensive.

On October 27, 1884, the court, WOODWARD, J., filed the following opinion and order:

It is undoubtedly true, as a general rule, that the report of a grand jury under the Bridge act of April 16, 1870, P. L. 1199, cannot be inquired into, or impeached, collaterally. But in the present case, independently of the affidavits and depositions submitted, it appears from the records of the court that Milton F. Williams, who was the foreman of the grand jury at the November Session of 1881, which recommended the building of the bridge in question, was also one of the original petitioners for the bridge. This, in our judgment, is fatal to the report.

Mr. Williams has been examined as a witness, and his deposition is before us. In this he made the following statement: " The bridge was passed by the grand jury—it looked as if in compliment to me as foreman of the grand jury, they knowing I was from Nescopeck. I know but little of the location of said bridge. I was not then acquainted with the location of said bridge, nor am I now."

While we are not unmindful of the rule adopted in the case

of Cluggage v. Swan, 4 Binn. 159, that "the testimony of
jurors should not be admitted to invalidate their verdicts," we
hold that the rule does not apply to a case like the present
one.   The township did not and could not have an opportunity
to challenge the array of grand jurors, and yet the township is
the party interested, inasmuch as upon it falls the expense of
building the abutments and piers, and of the filling in and
about the abutments.   The depositions show that these ex-
penses would in the present instance be very great, because of
the nature of the ground on either side of the proposed bridge.
We refer, in conclusion, to the case of the County v. Super-
visors of Plymouth, 11 Luz. Leg. Reg. 258.

The rule is made absolute.

Thereupon, upon application of the respondents, a re-hearing
was granted, the rule enlarged and further depositions taken,
claimed to show that the foreman of the grand jury took no
part in the matter of granting the bridge, but that it was
granted by the unanimous action of the other grand jurors;
that the bridge was necessary and the building of it would not
be expensive.   Counter depositions on the part of petitioners
were also filed.

On November 16, 1885, the court, WOODWARD, J., filed a
second opinion and order as follows:

We have read with care the additional depositions submitted
to us in this case, but can see no good reason in them for
changing the opinion heretofore expressed.

As early as the year 1813, it was held by our Supreme
Court that if one of the petitioners for a road acts as a re-
viewer under appointment by the court, it will be fatal to the
proceedings: Radnor Road, 5 Binn. 612.   In the present case
it is not denied, that Mr. Williams, who was one of the original
petitioners for the bridge, was also the foreman of the grand
jury which recommended that the bridge be built.   This fact
appears of record, and depositions as to just what share the
foreman had in the deliberations of the grand jury upon the
subject, do not seem to us to be entitled to much weight.   It
now appears however, that the original petition for the bridge
had at one time been deposited at a store in which Mr. Williams
was employed, for the purpose of obtaining signatures, and
also that he took an active part in fixing the amount of the ap-

propriation to be made by the county, when that question came before the grand jury. Without intending any reflection upon the purposes or motives of Mr. Williams, in this matter, we remain of the opinion heretofore expressed by us, and therefore make the rule absolute.

The respondents to the rule then took this writ specifying that the court erred:

1. In entertaining the petitions presented asking that the approval of the report of the grand jury should be stricken off, and in granting the rule to show cause why the said approval should not be stricken off.

2. In striking off the judgment of approval of the report of the grand jury.

*Mr. A. Ricketts*, for the plaintiffs in error:

1. Under the special act of April 16, 1870, P. L. 1199, when the report of the grand jury was approved by the court and entered upon the records, the bridge became a county bridge, and every question as to its necessity and usefulness, etc., became res adjudicata. No power of reviewing the action of the grand jury was vested in the court, its power being limited to a simple approval or disapproval. Moreover, by the general laws, especially referred to in said special act, the duties concerning said bridge were laid upon the county commissioners, and in all proceedings relative to the same, the commissioners alone are the representatives of the county. The petitioners, therefore, had no standing in court: Broomall's App., 75 Pa. 173.

2. The judgment of approval of the report was entered November 19, 1881. The application to strike off was made May 14, 1884, not only after the term at which the judgment was entered had ended, but after several terms had elapsed, nearly two years and a half in time. The summary striking off the judgment was an assumption of power not vested in the court, not only for the reasons above presented, but because the court has no power to strike off or vacate a judgment which is regular on its face: Breden v. Gilliland, 67 Pa. 34, 37; Horner v. Hower, 39 Pa. 126; King v. Brooks, 72 Pa. 363; Reynolds v. Barnes, 76 Pa. 427. Especially was this beyond the power of the court after the end of the term at which the judgment was entered: King v. Brooks, 72 Pa. 363.

3. It will be observed, (1) that not a single ground of equitable jurisdiction upon which to impeach the finding of the grand jury or the approval of the court, was presented in the petitions; (2) that the action of the court in striking off the approval was not based upon any ground presented in the petitions; and (3) that the ground upon which the court based its action was just as plainly visible upon the records at the time of the approval, as at the time of striking it off.

4. Section 6, act of April 16, 1840, P. L. 411, provides that no person shall be excluded from being a juror in any proceeding where a township of which he is an inhabitant is a party, or because he is interested as such inhabitant or party. Bridges are of course determined upon by mutual concession and arrangements among the grand jurors brought together from all parts of the county. If after their report is finally approved, any set of citizens may come in and on this ground have the approval of a bridge stricken off at any length of time before the bridge is built, the procedure will simply be a fruitful source of litigation and uncertainty.

*Mr. Gustav Hahn* (with him *Mr. C. B. Jackson*), for the defendants in error:

1. Is a judgment regular, where a man acts as judge in his own case,—as petitioner for the bridge and as foreman of the grand jury in one and the same person? Moreover, the judgment was acquired in an ex parte proceeding, without notice, when only the advocates of the bridge were present. Striking off the approval of the court, is not striking off the judgment; it is merely the opening of it. And after the approval had been lifted, the applicants still had another chance before the grand jury, but they did not avail themselves of it. It is a fundamental rule in the administration of justice that a person cannot be a judge in a cause wherein he is interested: Broom's Leg. Max., 109.

2. The court will notice a substantial and fatal error in the proceeding, although counsel have omitted to make it a special exception, when it is deemed essential for the purposes of justice: Commonwealth v. Cane, 2 Pars. 265. If the plaintiff in error in his assignments omits a substantial error, the court reserves to itself the right of taking notice of it, in order to

prevent injustice: Galbraith v. Green, 13 S. & R. 95; Herrigas v. McGill, 1 Ash. 152.

OPINION, MR. JUSTICE WILLIAMS:

There is but a single question raised on this record. The report of the grand jury locating a county bridge in Nescopeck and appropriating $1,500 to its construction, was presented in court on November 19, 1881, and on the same day, without notice to the county or township authorities, was approved by the court. On May 14, 1884, the bridge not having been built by the county, on the petition of citizens and tax-payers of Luzerne county a rule to show cause why the approval of the court should not be struck off was granted, and notice directed to the county commissioners and the supervisors of Nescopeck. This rule was made absolute on October 27, 1884, for the reason that the foreman of the grand jury which made the report was a petitioner for the bridge, and took part in the deliberations of that body upon the propriety of granting his own petition. A motion to reinstate the rule was refused on November 16, 1885. The contention of the plaintiff in error is that the court had no power to make the order vacating or striking off the approval of the report. He argues that the indorsement of the approval of the court was a judgment rendered by the Quarter Sessions, and that the power of the court over it ended with the term in which it was entered.

In support of this proposition, King v. Brooks, 72 Pa. 363, is cited by the plaintiff in error. But the question under consideration in that case related to a common law judgment entered upon a verdict. In the opinion delivered by SHARS-WOOD, J., it is stated that judgments appearing to be regular on the record should not be struck off after the close of the term, but that judgments entered by virtue of a warrant of attorney or by default may be opened or vacated for cause, without limit as to time. The rule to be gathered from the cases seems to be, that for reasons appearing upon the face of the record, a judgment by default or upon warrant of attorney may be struck off, whenever the defect in the record is brought to the attention of the court, without regard to the term in which it was entered. So, for reasons appearing dehors the

record, such judgment may be opened to let in a defence without limit as to time.

If we concede to the entry of approval upon the return of the grand jury the effect of a judgment by default, as is contended for by the plaintiff in error, yet the reason for the action of the court was upon the face of the record. The foreman of the grand jury was a petitioner for the bridge. This made him a party to the proceeding. As a grand juror he was to act upon his own petition. While representing the public and inquiring into the necessity for the expenditure of $1,500 on the part of the county, in the erecting of this bridge, as a party he was asking that the expenditure should be made, and representing the bridge to be necessary. These positions were clearly incompatible. The public had the right to an impartial and disinterested grand jury, so that the questions of the necessity and cost of the bridge might be passed upon without bias. But the record showed that a petitioner was foreman of the grand jury that granted the petition. This was a sufficient reason for setting the report aside, and if the attention of the court had been called to it when the report was presented it would have been done promptly. It has been held repeatedly that a report of viewers should be set aside when a petitioner is one of the viewers: May Town Road, 4 Y. 479; Radnor Road, 5 Binn. 612. If such a defect in a report of viewers should escape notice when the report came up regularly for confirmation, the court would, whenever its attention was called to it, set aside the order of confirmation, unless the road had been actually opened and expenditures made in good faith in pursuance of it. So, in the case under consideration, the defect escaped the attention of the court when the report of the grand jury came up for confirmation, but it was discovered and attention called to it before the erection of the bridge, and the court was clearly within the rule when the order was made striking off the approval of the court.

We have considered this question from the standpoint of the plaintiff in error, viz.: that the order of approval is to be treated as a judgment in determining the power of the court over it, but we by no means wish to be understood as affirming that doctrine. It may well be doubted whether orders of

approval and confirmation made in the routine work of the sessions, without notice to the parties to be affected thereby, ought to be regarded as having the same degree of solemnity as judgments regularly entered after notice or on warrant of attorney. The point is not necessarily raised in this case, and we do not decide it. A sufficient reason appeared upon the record to justify the action of the court complained of, and for that reason the order of the Quarter Sessions is

Affirmed.