## Forty-Sixth Ward.

*Municipalities—Division of cities into wards—Commissioners—*
*Practice, Q. S.—Act of May 23, 1874, P. L. 230—Appeals.*
On an appeal from an order disapproving the recommendation of
commissioners in proceedings under the Act of May 23, 1874, P. L. 230,
to divide the ward of a city, and dismissing the petition, the appellate

court cannot consider the evidence inasmuch as the appeal is in effect only a certiorari, but it may look into the opinion of the lower court for the purpose of ascertaining the grounds of the decision; and if, from such examination, it appears that the petition was dismissed for the reason stated that further legislation was necessary, the appellate court will not concur in the part of the order dismissing the petition; but if it appears from the face of the record that four of the five commissioners were petitioners for the division, the part of the order disapproving the recommendation of the commissioners will be sustained.

Argued Oct. 5, 1914. Appeal, No. 242, Oct. T., 1914, by Thomas J. Norris et al., from order of Q. S. Phila. Co., June T., 1914, Docket No. 3, disapproving report of commissioners and dismissing petition in the Matter of the Petition for the Division of the Forty-Sixth Ward of the City of Philadelphia. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Order modified and affirmed.

Petition for the division of a ward.

AUDENRIED, J., filed the following opinion:

It is improbable, of course, that the activity of the petitioners and of the others anxious for the division of the forty-sixth ward is without a definite purpose of importance to them; but it is not altogether apparent what ultimate ends they desire to accomplish. It is by no means impossible that in the case of this application, as in other cases of this kind heretofore presented to the court, the real springs of action are to be found in local political conditions, of which the court has no knowledge and which is not a part of its duty to investigate.

Be this, however, as it may, the commissioners appointed to inquire into the propriety of dividing this ward, after listening with commendable patience to the arguments of those citizens interested in the matter, have reported a recommendation that it should be divided, and that the dividing line should be at Pine street.

The basis on which they rest their recommendation is the assertion that "its division would give to the same territory and population an additional representative in select council to which it is entitled, because the ward, as at present constituted, is above the average in population."

While the act that provides the method now in use for the division of wards reads, "If the commissioners report favorably to such division or creation, the court shall order a vote of the qualified electors to be taken on the question," this provision is not mandatory, for it is coupled with the following clause, "At the term after that at which the report shall be made, the court shall make such order thereupon as to them shall appear just and reasonable." Under this authority it is manifestly the duty of the court to scan the reasons suggested in support of the commissioners' recommendation with great care.

A thorough examination of the report and of the testimony taken by the commissioners has revealed no satisfactory reason why the proposed step should be taken.

It is apparent that in their consideration of the matter committed to it, the commission has looked at the question wholly from the point of view of the people of the forty-sixth ward and failed to remember that in certain aspects the subject is one in which the whole city is concerned.

The immediate legal result of the division proposed would be twofold. Instead of two constables, the district included in the present ward would have four; instead of one representative in the select council of the city, it would have two.

In the increase of the number of the constables of the district, the city at large is not concerned. That matter may be of interest to the people of the forty-sixth ward, or it may not. Nothing was said upon this subject at the meeting held by the commissioners.

Without disparagement to the ancient and honorable office of constable, it may be observed that while recent prosecutions in this court have established the fact that in some parts of the community the people have suffered from having too many constables in their midst, it has never happened since the consolidation of the city that any neighborhood has complained of a lack of such officials. The multiplication of constables is certainly no ground on which the measure proposed can be justified.

In obtaining additional representation in select council, the people of the ward are, undoubtedly, interested. Some of them told the commissioner so quite emphatically. The reason is manifest. One of those who gave their opinions on this subject to the commissioners clinched his argument in favor of the division of the ward by asking pithily, "If we had another ward, wouldn't the new ward get its allotment of all improvements given out? . . . . Wouldn't we in the new ward, as we will be in the new ward if the old ward is divided, get a pro rata division of the spoils, because this is the word, spoils?" Another said, "I think one of the major reasons why this ward should be split is the fact that it would give the kite a chance to fly."

Such reasons do not appeal to the city at large or to the court, and if the increase in the representation of the people of that part of Philadelphia in select council is to result in nothing else but a flying of kites and a grabbing of spoils, the ward should not be divided. Particularism, by which is meant exclusive attention to sectional or local interests, has been the great curse of all American legislative bodies, and is least excusable and most objectionable in the councils of a municipality. It is no longer a part of the scheme of our city government that the policing of a district, the removal of garbage, the mending of streets, etc., should be seen to by the ward councilmen. These matters are to be cared for by the city's executive officers.

That the various local communities of which the city is composed should be fairly represented in the city's legislative body is most desirable, if only for the reason that the feeling of being thus directly represented keeps alive the interest of the citizens in public affairs, tends to secure their co-operation in the city government and renders them more ready to submit loyally to its ordinances. To increase the number of councilmen, however, is strongly to be deprecated. By those who have given most serious attention to the subject, the membership of the councils of Philadelphia is already considered to be entirely too large. No organization of such unwieldy proportions can be truly deliberative, or prompt and vigorous to act in emergency. In such a body, all sense of the individual responsibility of its members is lost; and there is danger that in times of crisis emotion and hysteria will overpower judgment.

It is urged that the area of the forty-sixth ward and its population are so great as to entitle it to be divided so that hereafter it shall form two wards; but in our opinion this position cannot be sustained. When the county was consolidated into the city of Philadelphia twenty-four wards were created. These were laid off without any regard to territorial equality; and they presented the greatest disparity in area. Probably more attention was paid in this matter to the question of population; but the application of even that standard was interfered with by a lingering recollection of the old local division of the county into townships, liberties, districts and boroughs. The wards of Philadelphia never were even approximately equal in population; and as time has gone by and neighborhoods have changed, the increase and shifting of the inhabitants have produced a still greater inequality in that respect in spite of the occasional interference of the legislature and the court, with the result that a most anomalous and unsatisfactory condition is presented so far as concerns the apportioning of representation in select council.

The number of wards has increased to forty-eight, each of which is entitled to a common councilman for every 4,000 voters that it contains, and each, whether large or small, may elect one member of select council and only one. According to the assessors' lists of 1913, which give the latest information obtainable upon this subject, the city contained a year ago 372,639 electors. The number of voters living in the forty-sixth ward was then 15,155. It is true that in the case of a number of the wards the voting population was much less than this. The eleventh ward has 1,726 voters, the sixth ward 1,496, and the ninth ward only 1,352; but on the other hand the twenty-second ward had 17,480 voters, the thirty-sixth ward 15,738, the thirty-fourth ward 14,402, the thirty-eighth ward 14,180, and on the assessor's list of each of eight other wards more than 12,000 names appear. The condition thus presented is chaotic. The statute is silent on the subject of what population a ward must have before it shall be divided; and from the facts to which allusion has been made, no principle can be deduced that will warrant the people of any neighborhood in saying, "We are entitled to greater representation in select council and have the right to demand that our ward shall be made into two."

The truth of the matter is that the wards in Philadelphia should be reduced in number and equalized so far as possible in area and population, regard being had to the probabilities as to future increase in the latter. Moreover, there should be adopted a reasonable system of nomenclature or numbering for the wards which will give some indication of their respective lo-cations.

The practical difficulties in the way of the rearrangement of the city into wards under the law as it now stands are insuperable. Legislation is needed to correct what has become a serious defect in our system of local government. The court may divide wards or make

new wards out of parts of two or more existing wards, but its power probably does not extend to the reduction of their number. Moreover, such power as it has can be exercised only when invoked by the petition of councils or of 100 qualified electors who, it has always been supposed, must reside in the district affected by the action proposed; and such suggestions when forthcoming are not always opportune or well founded.

The legislature should lay upon the court the duty of redistricting the city into wards at reasonable and fixed intervals of time, and grant it power to appoint of its own motion commissioners to make such investigations and report such information as may be necessary to guide it to intelligent and comprehensive action. To attempt to relieve the existing condition of things by further tinkering of the patchwork kind will be but to make confusion worse confounded; and nothing further should be done by the court in the way of dividing wards until such legislation has been obtained as will permit work to be done along the line that we have suggested.

[Upon the grounds above set forth the recommendation of the commissioners is disapproved; the prayer of the petitioners for the division of the ward is refused and the petition is dismissed.] [1]

*Error assigned* was the order of the court as above, quoting it.

*John J. McDevitt* and *Ira Jewell Williams*, with them *Harry S. McDevitt*, for appellants.—The court below exceeded its discretion: Koch & Dryfus v. Bridges, 45 Miss. 247; Hersburger v. Pittsburg, 115 Pa. 78; Bladen v. Phila., 60 Pa. 464.

*Ernest Lowengrund*, assistant city solicitor, with him *James M. Dohan* and *Michael J. Ryan*, city solicitor, for appellee.—The case is before this court on certiorari,

not on appeal proper: Lyon v. Dunn, 196 Pa. 90; In
re Diamond Street, 196 Pa. 254; Darby School 'Dis-
trict's Appeal, 160 Pa. 79; In re Division Valley Town-
ship, 146 Pa. 111; Annexation Camp Hill Borough,
142 Pa. 511; Com. v. Bird, 144 Pa. 194; Hogsett's
Appeal, 2 Pa. Superior Ct. 265.

The commissioners were not impartial: Becker v. Leb-
anon, etc., Ry. Co., 195 Pa. 502; Atchison v. McCulloch,
5 Watts, 13; Hamsher v. Kline, 57 Pa. 397; McConaghy
v. Kirk, 68 Pa. 200; Hunn v. Penn. Institution for the
Blind, 221 Pa. 403; Reilly v. Rodef Sholem Congrega-
tion, 243 Pa. 528.

The court of quarter sessions has discretionary power:
Haddock v. Com., 103 Pa. 243; Com. v. Conyngham,
66 Pa. 99; Brown v. Com., 3 S. & R. 273; Com. v.
Nayle, 2 Walk. 311; Small v. Small, 129 Pa. 366; Holl
v. Deshler, 71 Pa. 299.


OPINION BY RICE, P. J., October 12, 1914:

This case involves the construction and application of
the provisions of the act of 1874 relative to the division
of wards in cities. The appellant's counsel contend that
if the petition be in due form and signed by the requisite
number of qualified electors it is the imperative duty of
the court to appoint commissioners and that if the com-
missioners report favorably to the division and their
proceedings be regular it is the imperative duty of the
court to order a vote of the qualified electors to be
taken on the question of division, etc. On the other
hand, the contention of the city solicitor is that con-
sidering the statutory provisions as an entirety and
giving due weight to the provision that after the report
is made the court "shall take such order thereupon as
to them shall appear just and reasonable," a discretion
is vested in the court and that in the exercise of that
discretion the court may refuse to order an election.
We shall not undertake at this time to express an
opinion upon the broad question presented by these

conflicting views of the court's power and duty further than' is necessary in the disposition of the assignment of error. The order therein complained of reads as follows: "Upon the grounds above set forth the recommendation of the commissioners is disapproved; the prayer of the petitioners for the division of the ward is refused and the petition is dismissed." It will be seen that it embraces a dismissal of the petition as well as a refusal to approve the report of the commissioners and to order an election.

1. As to the dismissal of the petition. So far as we can discover or is alleged, the petition was in due form and signed by the requisite number of qualified electors, indeed, in all parts conformed to the requirements of the statute. While this appeal is in effect only a certiorari yet we may look into the opinion for the purpose of ascertaining the grounds of the decision. It would seem from an examination of the opinion that the reason for which the petition was dismissed is expressed in the following excerpt from the opinion of the learned judge: "The legislature should lay upon the court the duty of re-districting the city into wards at reasonable and fixed intervals of time, and grant it power to appoint of its own motion commissioners to make such investigations and report such information as may be necessary to guide it to intelligent and comprehensive action. To attempt to relieve the existing condition of things by further tinkering of the patchwork kind will be but to make confusion worse confounded; and nothing further should be done by the court in the way of dividing wards until such legislation has been obtained as will permit work to be done along the line that we have suggested. Upon the grounds above set forth the recommendation of the commissioners is disapproved; the prayer of the petitioners for the division of the ward is refused and the petition is dismissed." While there is apparent force in the suggestion that further legislation along the lines indicated is desirable yet we cannot assent to the view that the absence of such legislation is

ground for refusing to entertain a petition which in all respects conforms to the statutory requirements. In other words, conceding for the purposes of the case, that a discretion is vested in the court it must also be conceded that such discretion is to be exercised with reference to the facts and circumstances of each particular case as it arises and does not include discretionary power to refuse all applications until further legislation be had. Therefore, we cannot concur in the part of the order dismissing the petition.

But in determining whether the remaining part of the order should be affirmed or reversed we are not confined to a consideration of the reasons assigned by the court, but may and should consider any defect apparent of record that is fatal to the proceeding. Whatever may be said as to the nature of the statutory provisions, whether they be regarded as mandatory or directory, it is clear that a report of properly appointed and duly qualified commissioners is a condition precedent to the ordering of an election and a final decree dividing the ward. It appears of record, applying the rule that identity of name raises a prima facie inference of identity of person, that four of the five commissioners were petitioners for the division. This is not seriously questioned. It implies no reflection on them to say that they were not "impartial men" within the meaning of the statute. "It is inconsistent with the first principles of justice that the same person should be both judge and party:" Donegal Road, 4 Yeates, 478. Upon application of this principle confirmation of a road was reversed in that case because, inter alia, one of the petitioners had been appointed a reviewer. So in Road in Radnor, 5 Binney, 612, it was held that this is "an irregularity that can be overlooked" and is "fatal" to the proceeding. Again in Road in McClaysburg, 4 S. & R. 200, it was said that the point was settled by Road in Radnor. The principle was again applied in Road in Green and Kingsley Twps., 129 Pa. 527, under these circumstances.

Two of the viewers had been petitioners for the road but their names had been erased that they might be appointed and they were appointed without the court being aware of the circumstances. On certiorari the order confirming the road was reversed by the Supreme Court at bar. The principle was also applied in Nescopeck Bridge, 120 Pa. 288, 294, and in Ohio and Ross Road, 166 Pa. 132. It is applicable here with added force when it is remembered that four of the five commissioners may act for the entire body. The suggestion that such irregularity is cured by the taking of an oath to act impartially is impliedly answered in the negative by these cases. Nor can it be said that it was waived by anything that was done or omitted to be done at the presentation of the petition or afterwards. Perhaps if the report had been approved by the quarter sessions notwithstanding the objection raised at the bar of that court, it would be presumed on appeal that the court had determined the question of fact adversely to the present contention. We do not say how that would be. It is sufficient for present purposes to say that no adjudication was made and nothing is said in the court's opinion which gives rise to such presumption. True, the court does not assign it as a reason for its order, but this is not equivalent to a finding that it did not exist in fact. Doubtless, as suggested by the city solicitor, the appointment of these petitioners as commissioners was a mere inadvertence: nevertheless, the objection being apparent on the face of the record, we are bound to take notice of it and to hold that it was fatal to the report. The necessity for a speedy decision of the case renders further discussion impossible.

The order is modified by striking out the part dismissing the petition and as thus modified is affirmed.