# Appeals of Fuller Hogsett and Morgan H. Bowman.

*Appeals—Matters not reviewable.*

In a proceeding for creating a county bridge the necessity for the bridge, the ability of the township or townships to bear the expense and the propriety and expediency of erecting it as a county bridge, or of assisting the township or townships to erect it, are matters committed to the judgment and discretion of the viewers, the grand jury, the county commissioners and the court below, exercised in successive stages of the proceedings, and their decision is not reviewable if the proceedings are regular and were authorized by law.

*Judgments—Effect of—Collateral review.*

In a proceeding to create a county bridge, the regularity of the proceedings whereby the roads or streets on which it is constructed were ordained cannot be questioned collaterally nor reviewed on appeal.

*Navigable stream—Roads and streets.*

There is as much authority in law for laying out a street in a borough across a navigable stream as there is for laying out a township road in the same way.

*Roads and streets—Highways.*

Streets regulated and repaired by the authority of a municipal corporation are as much highways as are public roads laid out by authority of the court of quarter sessions. The word "road" may be fitly used to designate a city or borough street and the expression "public road or highway" used in the 35th section of the act of June 13, 1836, relative to the erection of county bridges, includes streets or alleys in a borough.

*County bridges—Boroughs—Townships.*

The legislature intended the act of 1836 to include borough streets as well as township roads, and the statute contemplates the erection of a county bridge in a borough or connecting two boroughs.

Argued April 22, 1896. Appeal, No. 90, April T., 1896, by Fuller Hogsett and Morgan H. Bowman, from decree of Q. S. Fayette Co., Sept. Sess., 1892, No. 3, road docket, erecting a county bridge over Youghiogheny river from Apple street in the borough of Connellsville to Trader's alley in the borough of New Haven. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

- The records disclosed the following facts : The western shore line of the Youghiogheny river is the boundary line between the borough of New Haven on the west and the borough of

Connellsville on the east.  Trader's alley, a public alley of the former borough, terminated at the Connellsville borough line and was twenty feet wide.  Nearly opposite to it and running in the same general direction was Apple street, a public street of the borough of Connellsville.  This latter street terminates in Water street which runs parallel with the river.  In 1891 the burgess and town council of the latter borough presented their petition to the court of quarter sessions in which they set forth that they had resolved and were about to extend Apple street from Water street to the borough line on the west side "where the said street will connect with Trader's alley in the borough of New Haven," and prayed for the appointment of viewers to assess the damages, etc.  Pursuant to leave granted by the court exceptions were filed, which, after argument, were overruled in March, 1892.  Viewers were then appointed who in due time reported that no damages above the benefits were sustained.  Their report was confirmed nisi on June 9, 1892, and, so far as appears, no exceptions were filed thereto.  In June, 1891, the burgess and town council of the borough of New Haven presented their petition to the court, in which they set forth that an ordinance had been duly passed widening that part of Trader's alley which lies between Front street and the Connellsville borough line to a uniform width of fifty-five feet, and prayed for the appointment of viewers to assess the damages, etc.  Viewers were appointed who filed their report at the next term.  No exceptions having been filed the report was confirmed on February 3, 1892.  The damages awarded were paid subsequently, and the owners of the land taken deeded the same to the borough.

In September, 1892, citizens of the boroughs of New Haven and Connellsville and of Connellsville, Dunbar and adjoining townships presented their petition for the appointment of viewers in which they set forth:  "That the Youghiogheny river crosses a public road or highway through and between said Connellsville and New Haven boroughs, said road or highway being known as Apple street in Connellsville borough and as Trader's alley in New Haven borough, that it is necessary to erect and maintain a bridge across said river at said road or highway, and the erecting of said bridge requires more expense than is reasonable that one or two adjoining townships or boroughs should

bear." Viewers were appointed who reported inter alia that they were "of the opinion that a bridge over the Youghiogheny river at the place where the public highway leading from Connellsville to New Haven and known as Apple street in Connellsville and as Trader's alley in New Haven crosses said Youghiogheny is necessary, and would be too expensive for said township, townships or boroughs. That we have accordingly laid out said bridge upon said public highway and over said river, that being the best and most available location for the same, said bridge to pass nineteen feet over the tracks of the Baltimore & Ohio Railroad on the Connellsville side and to extend eastward so far as it is necessary to reach the surface of Apple street." At the succeeding sessions the matter was laid before the grand jury, who approved the report of the viewers and further stated "that it appears to us, the said jury, that such bridge is necessary and would be too expensive for the said boroughs."

In February, 1894, exceptions to the report of viewers were filed by citizens of the county, which after argument were overruled by Hon. J. F. Slagle, specially presiding, in the following opinion:

The exceptions do not raise any questions as to the regularity of the proceedings. They are rather addressed to the discretion of the court in approving the report of viewers. Additional exceptions were filed February 10, 1894, which raise some questions as to their legality, one of which is suggested in their first exception.

The first exception is that "The building of this bridge is not authorized by the laws of Pennsylvania."

a. There is no traveled highway crossing a stream.

b. The streets which it is proposed to connect were opened for the express purpose of getting a site for the bridge. The third additional exception relates to the same matter. "The widening of Trader's alley in New Haven borough was not approved and confirmed in accordance with the law and rules of court, confirmed after the regular term."

The regularity of the proceedings in that case cannot be inquired into in this collateral proceeding. The court then had jurisdiction, and its judgment is conclusive unless reviewed

upon appeal duly taken. In such a case the Supreme Court will not reverse unless the appeal is taken within the time pre-scribed by law : Road in Salem Township, 103 Pa. 250, and besides, the exceptants have no standing to object to the proceedings in that case. The street was opened by the councils of the borough. They petitioned for the appointment of viewers to assess damages to property taken. The only parties to that proceeding were the borough and the owners of property. The exceptants have shown no right to question proceedings which were satisfactory to the parties interested : Broomall's Appeal, 75 Pa. 173. The other grounds of exception, if well taken, would prohibit the erection of a bridge at any point where a ford or ferry had not previously existed. The act of assembly certainly cannot be so limited. Such construction would be inconsistent with the 37th section of the act which authorizes a change of roads to effect the most suitable and least expensive location.

The first additional exception probably relates to the same matter. It is that the petition for the bridge was prematurely filed. There does not appear to be any other matter to which it refers.

The second additional exception is as follows : " There was no certificate of counsel that the petition was regular and conformable to law as required by rule of court."

This was known or should have been known to the exceptants when the proceedings were commenced. After the report of viewers and of the grand jury it is too late to raise such an objection. Even objection to a viewer on the ground of relationship must be made as soon as discovered : Hilltown Road, 18 Pa. 233; Road in Allen Twp., 18 Pa. 463.

The fourth additional exception is that G. W. Newcomer was one of the viewers that extended Apple street for the purpose of getting a location for the bridge, and was also a member of the grand jury that approved the bridge and took an active part in procuring said approval by grand jury.

As a viewer in the street matter, the duty of Mr. Newcomer was merely to assess the damages to owners of property taken. Being permitted to act in that matter he is presumed to be disinterested, and there would be no presumption that he was interested in the bridge so as to render him incompetent as a

viewer. Upon argument, counsel suggest that there were four grand jurors from Connellsville who took an active part to secure report favorable to bridge. This was not made the subject of exception and possibly ought not to be considered. But there is no suggestion that they are personally interested, and the fact that they were residents of Connellsville does not render them incompetent. In providing for the approval of the grand jury the legislature must have known that it would practically have as members some from the locality especially interested in the bridge, and if it had been intended to exclude such persons from the deliberations of the jury it would have been so provided. It has not been the policy of the law to exclude persons in matters of a public nature because of their interest as citizens: Act of April 16, 1840, sec. 6, P. L. 368; Purd. Dig. 967, pl. 78. The same policy is recognized in road cases: Road in Lower Windsor Twp., 29 Pa. 18.

The 4th, 5th and 6th exceptions relate to transactions affecting the Youghiogheny Bridge Company.

Proceedings were commenced at No. 114 December session, 1890, for condemnation of the bridge of that company. The suggestion of the 6th exception that the county is bound by the judgment in that case is not sustained by the record which shows that the report of the viewers was against its condemnation, and the proceedings there ended, and certainly the county is not liable to damages which may accrue to that company by the erection of a bridge which the county has the right by law to erect, as suggested in the 4th exception. Nor do we see any ground of estoppel even if the petitioners in this case are the same as in that, as suggested in the 4th exception.

This disposes of all exceptions of a technical character. The 2d and 3d relate to expediency.

Second. There is no necessity for a bridge.

Third. It would not be expedient to build this bridge.

All the suggestions under these exceptions, and also some of those under the exceptions already considered, are proper subjects for the consideration of the viewers and grand jury. They and the commissioners are the proper tribunals to determine all these questions. It is true that the act of 1836 provides that if it shall appear to the court that such a bridge is necessary, etc., but the duty is of the same character as in the approval of the

report of road viewers, though perhaps the discretion is broader. The viewers met upon the ground and examined witnesses; the grand jury call witnesses before them, and the commissioners may if they deem it necessary examine the location, and have the means of judging as to the ability of the districts especially interested, and the county to bear the expense of construction. The viewers' report is not conclusive. There may be a review of right as in road cases : Bedford Bridge, 72 Pa. 42, and the court could direct a review if deemed necessary. When to this is added the approval of a grand jury, it would seem that the court ought to be satisfied, and certainly ought not to interpose its objections unless in case of manifest error. Nor do we think it the duty of the court to call witnesses before it when the opportunity is thus offered to have them examined before viewers, reviewers and grand jury.

The ability of the county to bear the expense is a matter for special consideration by the county commissioners. It is their duty to provide the funds. When the bridge has been recorded as a county bridge, this duty becomes obligatory, and it is to be presumed that they will not approve and record it as such if in their judgment the necessary funds cannot be raised without oppression to the county at large. For these reasons we are of the opinion that none of the exceptions are well founded, and that they should be dismissed and the proceedings approved.

There has been no formal approval by the court. It would probably be better practice for the court to enter its approval before referring the matter to the grand jury, and perhaps this was intended in the order directing the report of viewers to be filed and laid before the jury. To avoid any question, we will file an order dismissing the exceptions and formally approving the proceeding.

The court made the following orders :

And now, April 12, 1894, this case came on to be heard at a special court duly ordered and held February 10, 1894, upon exceptions to report of viewers and finding of the grand jury; and upon consideration thereof, it is ordered that all the exceptions be and are hereby overruled. And it appearing to the court that said bridge is necessary, and would be too expensive for said boroughs of Connellsville and New Haven, the report of the viewers and findings of the grand jury are

approved. And it is further ordered that the same be referred to the commissioners of said county for such action as they may deem expedient. [10]

From this order, the Youghiogheny Bridge Co. appealed to the Supreme Court, but the appeal was quashed upon the ground that it was premature. See Youghiogheny Bridge Co.'s Appeal, 168 Pa. 454.

The county commissioners then approved the report of the viewers, and further stated "that such bridge is necessary and would be too expensive for the said boroughs of Connellsville and New Haven, and we hereby direct that under the order of the court in the case made, the said bridge be recorded as a county bridge."

Fuller Hogsett and Morgan H. Bowman then appealed to this court.

*Errors assigned*, (10) the foregoing order of court, quoting same in full; (9) the refusal to set aside the report of viewers and to dismiss the petition for want of jurisdiction, and the over-ruling of the exceptions which were as follows : (1) the building of the bridge is not authorized by law ; (2) there is no necessity for the bridge : (3) it would not be expedient to build the bridge ; (4) it would practically destroy the chartered rights and franchises of the Youghiogheny Bridge Co. and render the county liable in an action for damages that would result ; (5) the petition for the bridge was prematurely filed ; (6) there was no certificate of counsel that the petition was regular and conformable to law, as required by the rule of court ; (7) the widening of Trader's alley was not approved and confirmed in accordance with the law and the rules of court confirmed after the regular term ; (8) one of the viewers that extended Apple street for the purpose of getting a location for the bridge was also a member of the grand jury that approved the bridge and took an active part in securing said approval.

*S. E. Ewing, W. G. Guiler, P. S. Newmyer* and *R. H. Lindsey,* for appellant.—The act of 1836 means a county road, not street or alley, in a borough : Osage Street, 90 Pa. 114. Roads, streets and alleys, by the act of 1851, were confined to such as begin and end in a borough, but not to such roads as are or may

272        YOUGHIOGHENY RIVER BRIDGE.

Arguments—Opinion of the Court.        [2 Super. Ct.

be opened through the borough of which a part only is within the borough limits: Somerset v. Stoystown Road, 74 Pa. 62; South Chester Road, 80 Pa. 372; Parkesburg Borough Streets, 124 Pa. 524; Norwegian Street, 81 Pa. 352; Erie County v. Commonwealth, 127 Pa. 207; Livingston v. Wolf, 136 Pa. 533; McDevitt v. Gas Co., 160 Pa. 375.

The records of the court below do not show that proceedings were ever had or begun for the laying out or opening of a public road or highway between the end of Apple street in the borough of Connellsville and the beginning of Trader's alley in the borough of New Haven, to wit, the bed of the Youghiogheny river. The bridge itself is a highway and forms the connecting line between the highway on opposite sides of the river: In re Towanda Bridge Co., 91 Pa. 220; Penn Twp. v. Perry Co., 78 Pa. 459; Westfield Borough v. Tioga, 150 Pa. 153.

*Boyd & Umbel, James C. Work* and *Wm. A. Hogg*, for appellees. —Proceedings were instituted in 1892 by the borough of Connellsville, extending Apple street across the Youghiogheny river to join Trader's alley on the New Haven side. The proceedings to locate Apple street and Trader's alley cannot be questioned in this collateral proceeding: Road in Salem Twp., 103 Pa. 250. Streets are highways: Sharett's Road, 8 Pa. 89–92; Fitzwater Street, 4 S. & R. 105.

The bridge sections of the act of 1836 apply to boroughs as well as townships: Wilkes-Barre v. Luzerne Co., 3 Kulp, 302; Pottsville Borough v. Norwegian Twp, 14 Pa. 543; Westfield Borough v. Tioga Co., 150 Pa. 152.

OPINION BY RICE, P. J., July 16, 1896:

These proceedings were had under section 35 of the act of June 13, 1836, P. L. 551, relative to the erection of county bridges, and, so far as the record shows, they were regular.

The section provides that when a river, creek or rivulet over which it may be necessary to erect a bridge, crosses a public road or highway, and the erecting of such bridge requires greater expense than it is reasonable that one or two adjoining townships shall bear, the court shall, on the representation of the supervisors or on the petition of any of the inhabitants of the respective townships, order a view in the manner provided for in the

case of roads, and if, on the report of the viewers, it shall appear to the court, grand jury and commissioners of the county that such bridge is necessary and would be too expensive for such township or townships it shall be entered of record as a county bridge.

A subsequent act authorizes the county commissioners, when they do not deem it advisable to enter the bridge of record as a county bridge, to assist the township or townships if they consider it proper to do so: Act of May 25, 1887, P. L. 267.

The necessity for the bridge, the ability of the township or townships to bear the expense, and the propriety and expediency of erecting it as a county bridge, or of assisting the township or townships to erect it are matters committed to the judgment and discretion of the viewers, the grand jury, the county commissioners and the court below, exercised in successive stages of the proceedings, and their decision is not reviewable here, if the proceedings are regular and were authorized by law: Conestoga Bridge, 150 Pa. 541. All of the exceptions going to the regularity of the proceedings have been fully considered and correctly disposed of by the learned judge who presided below, and we can add nothing to what he has said concerning them.

But it is contended that the proceeedings were not authorized by law, because there is no public highway laid out, or opened, or in existence, which crosses the Youghiogheny River at the site of the proposed bridge, nor was such a highway ever in existence, either by authority of law, prescription or lapse of time. If by this sweeping assertion it is intended to deny the regularity of the proceedings whereby the extension of Apple street and the widening of Trader's alley were ordained, it seems sufficient to say that the records of those proceedings are not properly before us for review on this appeal, and the regularity thereof cannot be questioned collaterally. If it is meant that the proceedings, although regular in form, are wholly null and void because there was no authority of law for laying out a street across a navigable stream, the answer is that there is as much authority for that as there is for laying out a township road in the same way. To say that there is no authority for one is to say that there is no authority for the other, and thus we would reach the absurd conclusion that a county bridge cannot be built across a navigable stream under the 35th sec-

tion of the act of 1836, because the conditions, namely a public road or highway crossed by a river, can never exist in such a case. To hold that a ferry or ford or a bridge must have existed before in order to bring the case within the statutory conditions would be more plausible, but that conclusion would be inconsistent with the liberal and reasonable interpretation of the act which has been given in all the cases from Smithfield Bridge. 6 Whart. 362, to Conestoga Bridge, 150 Pa. 541. The learned judge who presided below well says: "The act of assembly certainly cannot be so limited. Such construction would be inconsistent with the 37th section of the act which authorizes a change of roads to effect the most suitable and least expensive location." Just such changes were made in both of the cited cases. In the former Sergeant, J., said: "There is nothing in the act of assembly that restrains the building of new bridges either as to place or number, provided they are approved of in the manner pointed out in the 35th section of the act of 13th June, 1836." As to building bridges over navigable streams he said: "The legislature had competent power to authorize the erection of bridges over streams declared public highways, either by a special act or a general one; and the act of 13th June, 1836, gives authority as to all rivers, creeks and rivulets without exception."

The only true way to look at the case is to take for verity the facts alleged in the petition, found by the viewers and grand jury, and necessarily implied in the action of the court and county commissioners, namely: that the site of the proposed bridge is at a point "where the public highway leading from Connellsville to New Haven, and known as Apple street in Connellsville and as Trader's alley in New Haven, crosses the Youghiogheny river;" that, but for the river, these two borough streets would constitute one continuous highway, connected with the other public roads and streets of the boroughs and county; that a bridge at that point is necessary for the accommodation, not only of the inhabitants of the two boroughs, but also of the public at large; and that the expense of erecting it would be greater than the boroughs ought to be required to bear. All of these facts are either distinctly found or are necessarily implied in the record before us. There arises then the question whether the statute contemplates the erection of a county bridge in a borough or connecting two boroughs.

The appellants' counsel contend that the words "public road or highway," as used in the act of 1836, mean a county road, one laid out or opened under that act and its supplements, or one which has been in existence by prescription or by lapse of time, and not a street or alley in a borough. . The decision of this question, if it is made to turn upon the meaning of the words without reference to the context, is free from difficulty. The word "road" in a proper connection may be fitly used to designate a city or borough street: Moyamensing Road, 4 S. & R. 106; Sharett's Road, 8 Pa. 89. But here the more comprehensive term "highway" is also used. This is the generic name for all kinds of public ways, including county roads, and city or borough streets. A way is, in legal contemplation, a highway, whether established by prescription or by dedication, or under the right of eminent domain, if there is a general right to use it for travel. The mode of its creation does not of itself determine its character, for this in general is determined by the rights which the public have in it: Elliott on Roads, 2.

Streets regulated and repaired by the authority of a municipal corporation are as much highways as are public roads laid out by authority of the quarter sessions, and the commonwealth, by virtue of its paramount authority as trustee for the public, will protect their rights therein against unlawful encroachments, sanctioned though they be by the municipal authorities. This being the general meaning of the words "public road or highway," is there anything in the context to show that they were used in a restricted sense?

The act of 1836 was intended to provide a general and comprehensive system for laying out and opening roads both public and private, and for erecting necessary bridges. At the time of its passage it became the only general law upon the subject. Excepting in the 22d section relative to the vacation of streets, etc., in cities and boroughs, and in sections 76 to 81 relative to the procedure in Philadelphia, no other municipal divisions of the state are mentioned but counties and townships.

If the narrow construction contended for must be given to the 35th section because it speaks of the expense to townships, then for the same reason many of the other provisions of the act must be construed to apply only to roads in townships, and if this construction had been given to the act there would have

been (until the passage of the general borough law of 1851) no general law under which roads or streets in boroughs could have been laid out and opened.  Very soon after the act was passed the question was raised whether the court of quarter sessions had authority to lay out a public road in a borough under its provisions, and it was held that it had : Newville Road Case, 8 W. 172 (1839).  Since that time the uniform construction of the statute has been that it was intended to include, within the scope of its provisions, borough streets as well as township roads, and that it is still in force  except so far as its provisions have been supplied by later legislation.  " The evident purpose of the act was to create an uniform system.  The city and county of Philadelphia are indeed excepted from the general provisions of the act, but the exception itself raises the strongest implication (if it be necessary to resort to implication) that all other cities and towns are embraced : " Callowhill St., 32 Pa. 361. These are but a few of the many cases sustaining the same general proposition : Sharett's Road, 8 Pa. 89 ; Smedley v. Irwin, 51 Pa. 445 ; Somerset and Stoystown Road, 74 Pa. 61 ; In re Ridge Ave., 99 Pa. 469 ; Burnish St., Pottsville, 140 Pa. 531 ; Private Road in Huntingdon, 149 Pa. 133.  In Pottsville Boro. v. Norwegian Township, 14 Pa. 543, an action brought by the borough to recover from the township one half the cost of a bridge built on a public highway over a creek, which was the dividing line between the two, was maintained under section 34 of the act of 1836.  The application of the decision to this case consists in this, that the section cited speaks only of townships ; the defense was urged and sustained in the court below that no valid contract was shown which bound the township, but the judgment was reversed, the court saying, " it is the law which throws the burden on the township of Norwegian, and not the contract of its supervisors, and it must redeem the obligation."

The question, though arising under a different act, was particularly discussed in the case of Road in Milton, 40 Pa. 300. The applicability of the decision will be seen upon an examination of the act of March 8, 1859, P. L. 111, and the following quotation from the opinion of Chief Justice LOWRIE : " We are not impressed by the fact that the Northumberland county road law of 1859 does not mention boroughs and borough officers, but only townships and township officers ; and think that

notwithstanding this it applies also to roads in boroughs. The general law of 1836 has the same omission, and yet it has always been regarded as the road law for boroughs as well as townships; this word being used as a general term including all municipal divisions relating to roads where no special provision is made."

The case of Bedford Bridge, 72 Pa. 42, was a proceeding for the erection of a county bridge connecting a borough and a township, but it was not even suggested that there was any doubt as to the authority therefor.

In the recent case of Westfield Borough v. Tioga Co., 150 Pa. 152, it appeared that, pursuant to the proceedings under the 35th section of the act of 1836, the county had erected the abutments and superstructure of the bridge but refused to construct the approaches. If we correctly understand the case the bridge was wholly within the borough of Westfield. A mandamus was applied for and granted, and on appeal the decree was affirmed on the opinion of the court below. The precise question discussed was whether a certain local law imposed the duty to build the approaches upon the local municipality, but the question whether a county bridge could be erected in a borough was also in the case, and as to that no doubt appears to have been entertained. The act of May 8, 1876, P. L. 131, as amended by the act of May 3, 1878, P. L. 41, authorizing the acquisition of toll bridges by the county, and declaring them county bridges, requires the viewers to report whether "the payment of tolls on the same is an unjust burden on the travelling public and the people of the township or townships where the same is located." The court and grand jury must find, as a condition precedent, that "the payment of tolls thereon is an unjust burden on the travelling public and the people of the township or townships near where the same is located." Not a word is said about boroughs, but I am not aware that in any of the cases that have arisen there has been any intimation that the acts are confined to bridges in townships. Indeed, in City Ave. & Germantown Bridge, 164 Pa. 394, it was held that they are applicable to Philadelphia county. See also Montgomery Co. v. Bridge Co., 110 Pa. 54; Mifflin Bridge Co. v. Juniata Co., 144 Pa. 365.

There would be glaring inconsistency if it were to be held

that a county bridge may be acquired, but cannot be built, in a borough.

The act of April 29, 1891, P. L. 31, providing for the erection of bridges joining a city and a borough, is referred to as showing the construction which the legislature has put on the 35th section of the act of 1836. Just how much weight an implied legislative construction of a prior law is entitled to is a question we need not discuss. There is no certain or even plausible inference that the act of 1891 was passed because the legislature supposed there was lack of authority, under the existing law, to erect a county bridge even in the particular case to which that act applies, much less that they supposed there was not authority in a case like the present.

The reasons which moved the legislature to enact the 35th section are apparent on its face, and they apply with as much force to the bridging of highways in boroughs as in townships and at the present time as at the time of its enactment. Having regard to the purpose of the section, and adopting the same liberal interpretation that has been given to the act as a whole, we have no difficulty in arriving at the conclusion that the legislature intended to include borough streets as well as township roads within the general and comprehensive terms "public road or highway."

All of the specifications are overruled, and the decree is affirmed.