## Youghiogheny Bridge. Appeal of Fuller Hogsett and Morgan H. Bowman.

*Bridges—County bridge—Boroughs—Highways—Act of June 6, 1836.*

The Act of June 6, 1836, P. L. 551, by its express words, refers to roads and highways crossed by rivers and creeks between adjoining townships, and, while a liberal interpretation of the act will authorize the bridging of a highway between two adjoining boroughs crossed by a river, yet jurisdiction of the court of quarter sessions over highways of. cities and boroughs was expressly withheld in the act: Osage St., 90 Pa. 114; and there is no intimation of a jurisdiction in this particular to authorize the erection of county bridges so as to prolong or extend the street of a borough; but, at the inception of the proceeding in the court of quarter sessions to obtain such bridge, and as its very base, there must exist, in a reasonable sense, and within the sense of the act, an actual highway to be bridged, not one existing in the imagination, or on paper.

*Corporation bridges—County bridges—Act of May 8, 1876.*

Where a corporation owns and operates a good substantial bridge, of sufficient capacity, crossing a river on a highway, and connecting two boroughs, which becomes burdensome, the Act of May 8, 1876, P. L. 131, was expressly intended for the relief of the traveling public and the protection of the stockholders of the bridge company, and no court ought to sanction a proceeding to build another expensive bridge, not three hundred feet distant, and thus to practically confiscate the property of the corporation.

Argued May 10, 1897. Appeal, No. 495, Jan. T., 1896, by Fuller Hogsett and Morgan H. Bowman, from judgment of Superior Court, affirming an order of Q. S. Fayette Co., Sept. T., 1892, No. 3, directing a bridge viewers' report to be referred to the county commissioners. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from judgment of Superior Court: 2 Pa. Superior Ct. 265.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was judgment of the Superior Court.

*P. S. Newmyer* and *R. H. Lindsey*, with them *W. G. Guiler* and *S. E. Ewing*, for appellants.—A mere glance at the records in this case discloses the fact that these proceedings are under

the general road law, the act of 1836 and its supplements; in fact, the Supreme Court so treated the matter in the decree quashing an appeal which had been taken before the county commissioners took any action in the case: Youghiogheny Bridge Co.'s App., 168 Pa. 454.

We are met at the very threshold of this inquiry by the question, what is meant by the phrase " public road or highway? " We submit that it means a county road, one laid out or opened under the act referred to and its supplements, or one which has been in existence by prescription or by lapse of time and not a street or alley in a borough: In re Vacation of Osage Street, 90 Pa. 114; Palo Alto Road, 160 Pa. 104; Somerset and Stoystown Road, 74 Pa. 62; South Chester Road, 80 Pa. 372; Henry Street, Allegheny City, 123 Pa. 356; Parkesburg Borough Streets, 124 Pa. 524; Norwegian Street, 81 Pa. 352; Erie County v. Com., 127 Pa. 207; Livingston v. Wolf, 136 Pa. 533; McDevitt v. Gas Co., 160 Pa. 375.

The bridge itself is a highway and forms the connecting lines between the highway on opposite sides of the river: Towanda Bridge Co., 91 Pa. 220; Penn Twp. v. Perry County, 78 Pa. 459; Westfield Borough v. Tioga Co., 150 Pa. 153; Erie County v. Com., 127 Pa. 206.

There is no necessity for the erection of the proposed bridge, as is evidenced by a remonstrance against the same, signed by over eight hundred citizens and taxpayers of the county, and by the further fact that the bridge erected by the Youghiogheny Bridge Company constituted, when it was open to public travel, a portion of the highway where the river crosses the same.   It was by the act of assembly under which it was erected dedicated to a public use, subject only to the right of the company to exact reasonable tolls for such use: Monongahela Bridge Co. v. Pittsburg & Birmingham Ry. Co., 114 Pa. 478; Rapho v. Moore, 68 Pa. 404; Penn Twp. v. Perry County, 78 Pa. 457; Pittsburgh & West End Pass. Ry. v. Point Bridge Co., 165 Pa. 37.

A street is a highway, but we submit that it is not a highway in the sense contemplated by the act of 1836: Somerset Road, 74 Pa. 64; Road in Moyamensing Twp., 4 S. & R. 106; Callowhill Street, 32 Pa. 361; Smedley v. Erwin, 51 Pa. 445; Ridge Avenue, 99 Pa. 469; Burnish Street, 140 Pa. 531; Private Road

in Huntingdon Borough, 149 Pa. 133 ; South Chester Road, 80 Pa. 370; Road in Milton, 40 Pa. 300 ; Bedford Bridge, 72 Pa. 42.

*W. A. Hogg*, with him *Boyd & Umbel* and *J. C. Work*, for appellee.—It is now more than four years since the court confirmed both the proceedings by which Apple street was extended and also the proceedings by which Trader's alley was widened, and these proceedings cannot now be questioned or disturbed: Road in Salem Twp., 103 Pa. 250.

The text books and dictionaries unite in defining a street to be a highway. The decisions of the Supreme Court are to the same effect: Sharett's Road, 8 Pa. 89 ; Road in Moyamensing Twp., 4 S. & R. 106.

The bridge sections of the act of 1836 apply to boroughs, without question as to jurisdiction: Pottsville Borough v. Norwegian Twp., 14 Pa. 543 ; Westfield Borough v. Tioga County, 150 Pa. 152 ; Towanda Bridge Co., 91 Pa. 220 ; Penn Twp. v. Perry County, 78 Pa. 459.

The fact that this highway has not been traveled is also made the subject of the appellants' first assignment of error. We think it is a sufficient answer that this is not in the record of this case, and not before this court: Conestoga Bridge, 150 Pa. 541.

OPINION BY MR. JUSTICE DEAN, October 11, 1897 :

The boroughs of Connellsville and New Haven, in Fayette county, are on opposite sides of the Youghiogheny river. For many years, the two boroughs have been connected by a suspension bridge constructed and owned by a corporation which charges tolls for its use. The bridge is in a good state of repair, and so far as its capacity and safety are concerned is sufficient for the accommodation of the public. On December 1, 1890, a petition, signed by citizens of both boroughs, was presented to the quarter sessions of Fayette county, setting forth that the bridge was necessary to the accommodation of the traveling public, and that payment of tolls was unjust and burdensome, and praying under the Act of May 8, 1876, P. L. 131, that viewers be appointed for its condemnation. Viewers were appointed accordingly, who reported, after full hearing, that the

payment of tolls was not an unjust burden on the public and the people of the two boroughs; and further, that the amount of damages that would be sustained by the bridge company, by taking of the same for public use, would be $80,000. This report was filed January 22, 1891. No exceptions were filed to it, nor was anything further done. On April 6, 1891, three months after the report was filed, proceedings were begun in both boroughs to establish a highway across the river, about three hundred feet from the site of the suspension bridge. The borough line of Connellsville includes the river bed to low water mark on the New Haven side; a petition of citizens of Connellsville was presented to the quarter sessions for the extension of a street known as Apple street across the river to low water mark on the opposite side. In New Haven, there was a narrow alley known as Trader's alley running down to the river, which would connect with the proposed extension of Apple street where it terminated at low water mark; proceedings for enlarging this alley to the width of a street were commenced by citizens of New Haven the same day, April 6, 1891, that the citizens of Connellsville moved to extend Apple street across the river. The proceeding to widen the alley does not seem to have been prosecuted further. In the proceedings for extension of Apple street the report was confirmed June 9, 1892, so that on the records there is laid out on paper the extension of Apple street in the borough of Connellsville down to and across the river, connecting with, or opening into, Trader's alley in the borough of New Haven. On September 26, 1892, a petition was presented to the quarter sessions by citizens of the two boroughs, setting forth that a highway, Apple street of Connellsville, connecting with Trader's alley of New Haven, is crossed by the Youghiogheny river; that it was necessary to erect and maintain a bridge across said river for the use of the travelling public, and that the expense of constructing and maintaining said bridge was greater than two adjoining townships or boroughs should bear; they therefore prayed the court to appoint viewers to report, etc. Viewers were appointed who reported favorably on the prayer, and that a bridge should be built across the river where the highway crossed it; and further, that the expense of such construction was greater than the two boroughs should bear, therefore, it should be built and main-

tained by the county. The report was laid before the grand jury March 11, 1893, and was by them approved. Exceptions and numerous remonstrances were filed. On February 10, 1894, after full hearing, the court overruled the exceptions and approved the report of the viewers; then referred it to the county commissioners, with the direction that, if by them approved, the bridge should be recorded as a county bridge. From this order the exceptants appealed to the Supreme Court; the appeal was quashed, because prematurely taken; there could be no final decree subject to appeal, until action upon the report by the county commissioners. On the coming back of the record, the county commissioners, on February 27, approved the report; then Hogsett and Bowman appealed from the final decree to the Superior Court. On hearing, that court affirmed the decree of the lower court, in opinion by President Judge RICE, and we have this appeal by appellants.

The principal exception to the decree of the quarter sessions and assignment of error to the judgment of the Superior Court, deny the statutory jurisdiction of the quarter sessions to order of record this bridge as a county bridge. The entire proceeding, it is conceded, is under section 35 of the Act of June 13, 1836, P. L. 551. That section is as follows:

" When a river, creek or rivulet, over which it may be necessary to erect a bridge, crosses a public road or highway, and the erecting of such bridge requires greater expense than it is reasonable that one or two adjoining townships shall bear, the court shall, on the representation of the supervisors, or on the petition of any of the inhabitants of the respective townships, order a view in the manner provided for in the case of roads, and if, on the report of the viewers, it shall appear to the court, grand jury and commissioners of the county that such bridge is necessary and would be too expensive for such township or townships, it shall be entered of record as a county bridge."

The first question raised here is, what is meant by " public road or highway ?" not what constitutes a public road or highway within the meaning of the lexicographer, or even generally in law, but what was the intent or meaning of the legislature by the use of the words in this section of the road law? We held in Osage St., 90 Pa. 114, that the jurisdiction of the courts over highways of cities and boroughs was expressly withheld by

the act of 1836. The section referred to, by its express words, refers to roads and highways crossed by rivers and creeks between adjoining townships; it does not intimate a jurisdiction in this particular to authorize the erection of county bridges so as to prolong or extend the street of a borough. At that point, there is no highway the foot of man ever trod. The proposed site of the street was never occupied by a ferry or fording. Connellsville borough desires to extend one of its streets to its extreme territorial limit; it meets with an obstacle, a river within its borders; to construct its own street within its own territory it invokes an act of assembly which, from its plain words, was never intended to burden the county with the cost of extending borough streets. The mere plotting of the street and filing it of record do not constitute a highway in fact; to order the county to build this bridge is to compel it to construct a highway within a borough, where none exists, while the act only provides for the construction of a bridge where a river crosses a highway in a township or between two townships. We do not hold that, under this act, a highway between two adjoining boroughs crossed by a river could not be bridged by the county; what we hold is, that, as the very base of the proceeding, there must exist in a reasonable sense, and within the sense of the act, at the inception of the proceedings, a highway to be bridged, not one existing in the imagination, or on paper. Take, for example, the site of the present suspension bridge between the two boroughs, built in 1862; when built, the river crossed at that point the old state road which operated a ferry; unquestionably, this was an actual existing road or highway between two boroughs, and, under a liberal interpretation of section 35 of the act of 1836, proceedings for a county bridge at that point could have been sustained. Nor do we go so far as to hold that such highway must be a much traveled one, like unto the old state road; whether traveled much or little, it must have an existence, not a mere projection.

It is clear that the citizens of these two boroughs are restive under the exaction of tolls by the bridge company; as was their right, they commenced proceedings to condemn the bridge under act of May 8, 1876. This act was expressly intended to meet such a case, and by proceedings under it, the citizens could be relieved of a vexatious burden, while the citizen who had in

vested in a public enterprise was protected in his property. The report of the viewers assessing the damages was filed; no further step was taken. If that report was defective in form it could have been referred back to the viewers for correction; if the damages were excessive they were subject to reduction. But, instead of pursuing the path pointed out by the statute, within three months the present proceeding was commenced, and by a perversion of the manifest intent of the statute, it is sought to construct another expensive bridge at the cost of the county, not three hundred feet from the first, which last is of sufficient capacity to meet the public wants; thus practically confiscating the property of the owners of the suspension bridge. No court ought to sanction such a proceeding, prompted by such motives, unless the words of the statute unequivocally so command. In our opinion, instead of this statute, under these facts, plainly authorizing the erection of this bridge, it plainly does not authorize it.

We have no word of dissent from the law so elaborately and clearly stated by the learned President of the Superior Court; but he has misapprehended the facts; not one of the cases cited is applicable to these peculiar facts; instead of this being a highway crossed by a river, it is an attempt by a borough to project and cross a river by a new highway, a street, at the expense of the county.

The decree of the Superior Court and of the quarter sessions are reversed at the costs of the appellees.