# Chartiers Creek Bridge.

*Bridges—County bridges—Crossing of highway—Substitution of one bridge for another—Act of June 13, 1836, secs. 35 and 37, P. L. 551.*

There is no authority under secs. 35 and 37 of the Act of June 13, 1836, P. L. 551, to construct a county bridge over a stream in substitution of an older bridge at a point 500 feet from the latter, where there is no highway on either side of the stream, where it will be necessary to construct lofty approaches aggregating 1,000 feet in length, and where a borough street will have to be extended to connect with the bridge.

Argued April 17, 1908. Appeal, No. 167, April T., 1908, by R. C. Johnston, from order of Q. S. Allegheny Co., Dec. T., 1906, No. 5, sustaining exceptions to report of viewers In re Bridge across Chartiers Creek. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to report of viewers. Before FORD, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the order sustaining the exceptions.

*W. H. S. Thomson,* of *Thomson & Thomson,* for appellant.— The act of assembly under which this bridge is located, is adequate in its provisions to meet a situation such as that presented here: Com. v. Loomis, 128 Pa. 174; Penn Twp. v. Perry County, 78 Pa. 457; Somerset v. Stoystown Road, 74 Pa. 61; Palo Alto Road, 160 Pa. 104; Appeal of Youghiogheny Bridge, 182 Pa. 618.

*John Marron,* of *Marron & McGirr,* with him *Garnet Speer* and *Robt. F. Clever,* for appellees.

OPINION BY BEAVER, J., October 12, 1908:

It is sought, by proceedings alleged to be authorized by secs. 35 and 37 of the Act of June 13, 1836, P. L. 551, to change the county bridge over Chartiers creek, 150 feet in length, which connects a road thirty-three feet wide common to Sheraden borough and Chartiers township, at the terminus of Windgap avenue in the latter, with a road on the northern side of the creek which is common to Stowe township and McKees Rocks borough, these four municipalities joining about the middle of the said bridge, and substitute therefor a bridge and viaduct 1,207.5 feet in length, beginning at the junction of Windgap and Youghiogheny avenues in Chartiers township and ending at the center of Singer avenue in the borough of McKees Rocks. The proposed bridge across Chartiers creek is about 350 to 400 feet up the stream from the old bridge and seventy-five feet above its level, and is connected by stone and steel structures on both sides thereof with the proposed termini in the borough of McKees Rocks and Chartiers township, as stated.

It would appear, from the elaborate and satisfactory draft of the localities involved, and the profile of the proposed bridge, which is furnished us in the appellant's paper-book, as though the improvement, as a whole, were not only important but advantageous and desirable, and would, for various reasons, including the overhead crossings of the railways, accommodate the travel between these populous sections in a much more satisfactory way than the previous grade crossing of one railroad and low subway of the other on different sides of the creek.

The serious question in the case, however, is whether or not such an improvement is authorized under the provisions of secs. 35 and 37 of the Act of June 13, 1836, P. L. 551, under which the proceedings are confessedly conducted. Under the liberal interpretation which we placed upon these sections in the Youghiogheny River Bridge case, 2 Pa. Superior Ct. 265, it would be possible perhaps to make such a radical change as is proposed here, but our Supreme Court did not agree with us in that interpretation, and, in 182 Pa. 618, gave a much narrower construction to the act in question, by which we are, of course, bound, and in the light of which we must view the present proceedings.

The official draft prepared by the viewers, which accompanies their report, and a copy of which is attached to the appellant's paper-book, shows that the old bridge, sought to be replaced by the one proposed by the viewers, was common, as already stated, to Sheraden borough, Chartiers township, Stowe township and McKees Rocks borough. The new bridge would connect Chartiers township and McKees Rocks borough, leaving Stowe township and Sheraden borough without any connection therewith. The present bridge was connected by a road extending from the south side of the creek to the line of Sheraden borough and Chartiers township at the terminus of Windgap avenue in the latter about 350 feet. On the north side of the creek was a public road common to Stowe township and McKees Rocks borough, running almost directly east. It is not shown that the proposed road connects in any way with this road at the northern terminus of the old bridge. So far as the draft shows, and so far as it appears from the record, there is no connection between the northern terminus of the proposed road on Singer avenue and the old road along the creek, except by a detour which passes under the railroad by the subway which it is sought to eliminate by the proposed bridge and viaduct.

The viewers' report: "That the above designated points are the most suitable places for the erection of said bridge in the best manner, and for such purpose we have found it necessary to change the course, location and bed of the road to be connected therewith as follows: 'Beginning at the intersection of the

centre lines of Chartiers Avenue with Singer Avenue in the Borough of McKees Rocks; thence south eighteen degrees, thirty minutes west, ten hundred forty-nine and seventy one-hundredths (1,049.70) feet to the centre line of Windgap avenue in Chartiers Township, where the same makes an angle in front of lot No. 3 in Samuel A. Duff's Plan of lots as recorded in Plan Book, Volume 16, page 97; thence along the centre line of said Windgap Avenue, south twenty-three degrees, ten minutes west, one hundred fifty-seven and eighty one-hundredths (157.80) feet to the intersection of said centre line with the centre line of Youghiogheny Avenue, the centre line of the proposed bridge coinciding for its entire length, with the centre line of the road above described. We recommend that the width of said road, as changed, be fixed at fifty feet.' "

The appellant invokes the aid of the Act of March 24, 1905, P. L. 50, providing for the erection of county bridges over any river, creek or rivulet forming the boundary between any borough and township of the first or second class, where the same crosses a public highway. It is to be observed, however, that the language of this act is precisely that of sec. 35 of the act of 1836 above referred to: "That, when any river, creek or rivulet forming the boundary between any borough and township of the first or second class, over which it may be necessary to erect a bridge, crosses a public road or highway." This language refers to the original erection of a bridge. Does it authorize the substitution of one bridge for another already erected? No provision is made for the vacating of the road leading to the bridge or for the removal of the bridge itself, as is done in the case of roads in secs. 18, 19 and 20 of the same act. Provision, it seems to us, would, or at least should, have been made in the law, if such a proceeding as is before us had been contemplated by the legislature. At the point where the new bridge is contemplated there is no highway on either side of the creek. We cannot see, therefore, how the bridge can be said to cross a highway between a borough and township of the first class, as contemplated in the act of 1905, supra. Was it contemplated by the legislature that the county was to be made liable for a bridge, whose proper length is 150 feet at the crossing of the

stream, and viaducts more than 1,000 feet in addition, carried on an expensive stone and steel structure, crossing two railroads and two or more public roads at an elevation of from fifty to seventy-five feet above the stream and the valley which borders it on both sides, and this directly over the roof of the house of one of the exceptants? If such an extraordinary power was intended to be conferred by the act of assembly, it should be distinctly so stated therein.

Assuming, however, that by a liberal interpretation of the legislation referred to, we could find authority in the law for the substitution of one bridge for another, what is to be done with the old bridge, for which the new one is substituted? There seems to be no provision in the law for such an emergency and, if there were, the viewers have done nothing whatever with the old bridge and the roads which it connects on the different sides of the stream. Shall the bridge be abandoned and the roads vacated? By what authority? We find nothing in the law which authorizes it, and there is certainly nothing in the report of the viewers which, if confirmed by the court, would relieve the commissioners and the township and borough authorities from the duty of maintaining both bridge and roads.

The exceptions sustained by the court below, upon which its final order was made, are:

"Second: There is no statute in Pennsylvania authorizing the location and erection of the bridge recommended by the Viewers' Report.

"Third: The court is without jurisdiction under the law to approve the Viewers' Report in this case recommending the location and erection of the proposed bridge, for the reason that the real location and erection of the said bridge does not connect the road crossed by Chartiers Creek and originally connected by the bridge which the Viewers' Report proposes to relocate and construct.

"Fifth: That the proceeding in this case is without any law in that it proposes the condemnation and taking of private property, and the construction of the bridge is remote and unconnected with the original bridge crossing Chartiers Creek."

These several exceptions were sustained by the court below,

are separately assigned, and constitute the first, second and third assignments of error. The fourth alleges error in dismissing the proceedings, and the fifth in not dismissing the second, third and fifth exceptions and in not confirming the viewers' report.

In the original opinion of the court below, dismissing the proceedings, it was said: "The proposed bridge is intended to replace the old bridge, and is located about five hundred feet westwardly from the site of the present bridge. The bridge is intended to be an overhead structure, and with approaches is about one thousand feet in length (actually over 1,200). The approach on the northerly side is in extension or prolongation of Singer Avenue, and passes over private property for about four hundred feet. The approach from the southerly terminus is a relocation of Windgap Avenue, and extends over private property a distance of about four hundred feet.

"In re Bridge over Chartiers Creek in McKees Rocks Borough and Chartiers Township, at No. 2, December Sessions, 1902, the viewers recommended a bridge over Chartiers Creek between Windgap Avenue at its intersection with Youghiogheny Avenue in Chartiers Township to Singer Avenue, at its intersection with Chartiers Avenue, in McKees Rocks. The bridge recommended by the viewers, as to location, termini and approaches, was the same as proposed in these proceedings.

"Young, J., in sustaining the exceptions, said:

"'It seems to be an attempt by the Borough and Township to do the very thing condemned in Youghiogheny Bridge, 182 Pa. 618, viz., to project and cross this river (creek) by a new highway, a street at the expense of the county.'

"In Youghiogheny Bridge, 182 Pa. 618, the court, in construing sec. 35 of the Act of June 13, 1836, P. L. 551, says:

"'The section referred to, by its express words, refers to roads and highways crossed by rivers and creeks between adjoining townships. It does not intimate a jurisdiction in this particular to authorize the erection of county bridges, so as to prolong or extend the street of a borough. . . . We do not hold that under this act a highway between two adjoining boroughs crossed by a river could not be bridged by the county; what we

hold is that as the very base of the proceedings there must exist, in a reasonable sense, and within the sense of the act, at the inception of the proceedings, a highway to be bridged, not one existing in the imagination or on paper.'

"Between the borough line and the intersection of Singer Avenue and Chartiers Avenue there is no highway to be bridged, and it will be necessary to prolong or extend Singer Avenue or to lay out a new road or highway if the proposed bridge is erected."

For the reasons stated by the court below, as well as the additional ones mentioned herein, we are of opinion that the action of the court in dismissing the proceedings, on the ground that there was no statute in Pennsylvania which authorizes them, was correct.

Decree affirmed and appeal dismissed at the costs of the appellant.