# Chartiers Creek Bridge (No. 1).

*Bridges—County bridges—Location—Relocation—Act of May 8, 1909, P. L. 494.*

Under the Act of May 8, 1909, P. L. 494, entitled "An act providing the manner of locating and erecting county bridges to take the place of district bridges," etc., a county in replacing an existing bridge with a new and suitable one, is not confined to the precise location selected years before for the old bridge.

Argued April 20, 1911. Appeal, No. 124, April T., 1911, by Frank Bryan, from order of Q. S. Allegheny Co., Sept. Term, 1909, No. 5, dismissing exceptions to report of

viewers In re Chartiers Creek Bridge.   Before RICE, P. J.,
HENDERSON, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Exceptions to report of viewers.

The exceptions were as follows:

1. The court of quarter sessions of Allegheny county is
without jurisdiction under the laws of Pennsylvania to
entertain the petition in the above case and to make the
order of September 11, 1909, appointing the viewers prayed
for in the petition for the reason that the Act of Assembly
of May 8, 1909, P. L. 494 is unconstitutional.

2. There is no statute in Pennsylvania which authorizes
the location, erection and construction of a bridge recom-
mended by the board of viewers in their report.

3. The court is without jurisdiction under the law to
approve the report of the viewers in the above entitled
case recommending the location, erection and construction
of said bridge for the reason that the real location, con-
struction and erection of said bridge does not connect the
road crossed by Chartiers creek and connected by the
bridge which is proposed to be replaced by the said bridge
recommended by the said viewers, but connects Singer
avenue and Windgap avenue.

4. That the court is without jurisdiction under the law
to approve the viewers' report in the above entitled case
for the further reason that the bridge which is proposed
therein does not carry over a highway passing from one
township into another, but will carry over a highway
passing from the borough into the township.

5. That the court is without jurisdiction under the law
to approve the report of the viewers in the above entitled
case for the reason that the bridge which is proposed in
said report does not take the place of any existing bridge
but is remote and unconnected with a bridge which it
proposes to replace.

6. That the court is without jurisdiction under the law
to approve the report of the viewers in the above entitled
case which report proposes to bridge over more than a

108    CHARTIERS CREEK BRIDGE (NO. 1).

Statement of Facts—Opinion of the Court.    [48 Pa. Superior Ct.

running stream being "a river, creek, or rivulet" but reports in favor of a bridge across a railroad, ravine, and low land.

7. That the proposed bridge is not necessary, but wholly unnecessary.

8. That the proposed bridge is the least suitable and the most expensive.

The court in an opinion by SWEARINGEN, P. J., dismissed the exceptions.

*Error assigned* was in dismissing the exceptions.

*Joseph R. Conrad*, of *Eckles & Conrad*, for appellant.

*W. H. S. Thomson*, of *Thomson & Thomson*, for appellee.

OPINION BY HEAD, J., October 9, 1911:

It may now be regarded as thoroughly established that the construction of the bridge which is the object of the present proceeding is urgently demanded by every proper consideration for the public safety and convenience. When three years ago this court considered a similar proceeding, having for its object the construction practically of the same bridge (Chartiers Creek Bridge, 37 Pa. Superior Ct. 281) our Brother BEAVER adverted to the substantial unanimity of all concerned in endeavoring to secure the desired improvement. This court, however, felt obliged to affirm the decree of the court of quarter sessions of Allegheny county sustaining exceptions to the proceedings on the ground that, under then existing legislation, it was not competent for the county of Allegheny to undertake the construction of such a bridge.

Since then the legislature has enacted the Act of May 8, 1909, P. L. 494, entitled, "An Act providing the manner of locating and erecting county bridges to take the place of existing bridges; the change of location of such bridges and roads connecting therewith; the vacation of old or existing bridges and roads connecting with the same."

After the passage of this act the present proceeding was begun and the construction of the proposed bridge has again received the approval of another board of viewers, another grand jury, the county commissioners, and apparently all of the municipalities and individuals affected thereby save only the present exceptants. The report of the viewers has been confirmed by the learned court of quarter sessions. In taking this appeal the exceptants again ask us to say that, notwithstanding the passage of the act referred to, the county is still without legislative power to construct the bridge. With this conclusion we are unable to agree.

There is now, as there has been for many years, a public highway on both sides of and across Chartiers creek, the highway being carried over by a bridge which is unquestionably a county bridge. By lapse of time and the wonderful growth of population in that particular section of the county, the building of railroads, street car lines, etc., the existing bridge has become utterly inadequate and its continued use attended with both inconvenience and danger to the traveling public. It can hardly be urged in the face of the very language of the act that the county, in replacing the existing bridge with a new and suitable one, must be confined to the precise location selected years ago. The act declares that in such a case when viewers have been appointed they "shall have power, by virtue of their appointment, to change the location of such bridge so that the same may be located and erected in the most suitable place, or at the least expense, or in the best manner, etc." We cannot agree therefore that in changing the location of the bridge, so that the use of the new one may not be attended with the dangers that would be incident to its use if again erected on the old location, the viewers stepped outside the powers conferred on them by the legislature.

Nor can it be justly argued that the act of 1909 is only applicable to cases where a new bridge is to be first erected on an original location, because the act declares:

"that whenever any public highway crosses any creek over which any bridge has been heretofore or may hereafter be erected, and it becomes necessary to erect a new bridge to take the place of the existing bridge, the court of quarter sessions shall order a view, etc."

The act further provides: "and in case of the change of location of such bridge, (the viewers) shall also report what change in the course or bed of the road to be connected therewith will be necessary, and shall also report the vacation of the old or existing bridge." In the exercise of the power thus conferred the viewers have vacated the old bridge. We have then an existing highway on both sides of the stream to be carried over the stream by the new bridge on the new location instead of by the old bridge on the former location, and we have the change "in the course or bed of the road" necessary to bring the public highway on each side of the creek to the new location of the bridge. The viewers have found that the expense of the new bridge will be greater than it is reasonable that the adjoining township (Chartiers) and borough (McKees Rocks) should be required to bear. The record shows that it was satisfactorily made to, "appear to the court, grand jury and commissioners of the county that such bridge is necessary and its erection would be too expensive for such township and borough to bear." These conditions having been found to exist, the mandate of the statute is that such bridge, "shall be entered on record as a county bridge."

Fairly interpreting then the act of 1909 by the aid of the familiar canons of construction which require us, in seeking for the legislative intent, to consider among other things the old law, the mischief and the remedy, we are led to the conclusion that the act in question furnishes the necessary authority for the present proceeding and consequently that the decree of the court of quarter sessions confirming the report of viewers and dismissing the exceptions thereto ought not to be interfered with.

One of the exceptions attacked the constitutionality

of the special Act of February 24, 1873, P. L. 155, under
which the county engineer, who ex officio was one of the
viewers appointed, deputized his assistant to act in his
place.  This was not pressed upon the argument of the
case, it being conceded as we understood it that the posi-
tion was untenable in the light of a decision of the Supreme
Court disposing of that question in a manner adverse to
the contention of the appellant.

The assignments of error are all overruled and the
order or decree of the learned court of quarter sessions
dismissing the exceptions to the report of the viewers
and confirming said report is affirmed.

Decree affirmed.

HENDERSON and PORTER, JJ., dissent.