# Monessen-Charleroi Bridge.

*Bridges—Freeing of bridges—Abolition of tolls—County bridges —Act of May 8, 1876, P. L. 131.*

The Act of May 8, 1876, P. L. 131, entitled "An Act to authorize the acquisition by the several counties of this Commonwealth, for the use of the county, of bridges erected over rivers, creeks and rivulets, and for the abolition of tolls thereon," has no application to a case where the bridge to be 'freed connects highways running parallel to a river on both sides thereof, and crosses the river at a place where prior to the incorporation of the company and the erection of the bridge in question, the river was not crossed by a highway.

Argued April 17, 1917. Appeal, No. 192, April T., 1917, by Henry W. Scott et al., from order of Q. S. Washington Co., Nov. T., 1916, No. 179, sustaining demurrer to a petition to free a bridge in the Matter of the Monessen-Charleroi Bridge. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and. WILLIAMS, JJ. Affirmed.

Demurrer to petition to free a bridge.

The court in an opinion by McILVAINE, P. J., and IRWIN, J., stated the facts to be as follows:

The bridge which it is sought in this proceeding to have made a county bridge is 1,997 feet long, including its two approaches which are together over 100 feet; or in other words, Lincoln avenue in North Charleroi Borough in Washington County, on which one end of the bridge opens, is 1,997 feet from Clarendon avenue in Rostraver Township, Westmoreland County, on which the other end of the bridge opens,—each of these avenues running parallel with the Monongahela river over which part of the bridge is built. The blue print which was submitted at the argument and filed by agreement of the parties as showing the true location and surroundings of this bridge and these avenues and of the

Monongahela river, reveals the fact that the two spans of the bridge over the river are only 805 feet long, that there is a span of the bridge 526 feet long between the west bank of the river and Lincoln avenue in North Charleroi, and a span of the bridge 666 feet long between the east bank of the river and Clarendon avenue in Rostraver Township, and that the bridge between the river and these two avenues on either side is built over two railroad tracks, the Pittsburgh & Lake Erie on the Westmoreland County side and the Monongahela Division of the Pennsylvania Railroad on the Washington County side. This toll bridge was built by the Mercantile Bridge Company for the use of an electric railway company that runs its street cars over it, as well as for the accommodation of the public that travels over it on foot and in vehicles, and for this reason it was built to extend over the railroad tracks, the bridge over the tracks being longer than the bridge over the river.

Admittedly there was no public road over the river connecting Lincoln avenue and Clarendon avenue at or along the line on which this bridge was built. It was largely built on either side of the river on private and governmental property, and there can be no claim in fact that this bridge is part of a public road which crosses a river or part of a public road which the Monongahela river crosses.

The court sustained the demurrer.

*Error assigned* was decree sustaining the demurrer.

*James I. Brownson,* with him *Hugh E. Fergus* and *T. H. W. Fergus,* for appellant.—The reasonable construction of the Act of 1876, and its true intent and meaning, are that whenever there is a highway crossing a river by means of a bridge, even though the bridge company has itself laid out that highway in the exercise of its charter powers, and such highway is necessary for the accommodation of the public, and tolls thereon have become bur-

densome, proceedings to free it from tolls may be entertained: Towanda Bridge Co., 91 Pa. 216; Williamsport v. Lycoming Co., 34 Pa. Superior Ct. 221; Montgomery Co. v. Schuylkill Bridge Co., 110 Pa. 54; City Ave. & Germantown Bridge, 164 Pa. 394.

*John C. Bane,* with him *David M. McCloskey* and *Alexander C. Tener,* for appellee.—The language of the act is plain, clear and unambiguous. It clearly expresses a legislative intention to limit the operation of this statute to bridges in certain locations, and not to make it operative upon all bridges, in all locations, and over all rivers, creeks or rivulets, at all points. And it is incapable of a logical construction and interpretation which will include the bridge here in controversy: Com. v. Loomis, 128 Pa. 174; Youghiogheny Bridge, 182 Pa. 618; Com. v. Kessler, 222 Pa. 32; Carver v. County Commissioners, 6 Philadelphia 197; Jones v. Tatham, 20 Pa. 398; Darlington v. United States, 82 Pa. 382.

OPINION BY PORTER, J., November 19, 1917:

There was presented to the court of Washington County a petition by certain residents and taxpayers, asking that the toll bridge owned by the Mercantile Bridge Company crossing the Monongahela river, be taken as a county bridge and freed from toll. The bridge company filed a demurrer to the petition. The proceedings were had under the Act of Assembly, May 8, 1876, P. L. 131. The question involved is, whether the act can be applied to a case where the bridge to be freed connects highways running parallel to a river on both sides thereof, the said bridge crossing the river at a place where prior to the incorporation of the company and the erection of the bridge in question, the river was not crossed by a highway. The first section of the Act of 1876 reads as follows: "That when any turnpike road company, bridge company, or other corporation has heretofore erected or may hereafter erect by authority of general or

special laws, any bridge over a river, creek or rivulet crossing any road or highway on which the public are required to travel, and such company or corporation is authorized to charge and take tolls for the use and crossing of such bridge, and at least twenty residents and taxpayers of the county where such bridge is situated shall petition the Court of Quarter Sessions of said county, or if said bridge be located on a river, creek or rivulet dividing two counties, then upon the petition of at least twenty residents of each county representing that the said bridge is necessary to the accommodation of public travel and that the payment of tolls over such bridge is burdensome to the traveling public and praying that the same shall be taken as a county bridge, the said court shall appoint six disinterested persons to view the said bridge and assess the damage, if any, which such company or corporation may sustain by the taking of the same, and make report of their proceedings to the respective court at the next term thereof."

It is admitted that there was no highway crossing the Monongahela river prior to the time when the bridge was erected. The words "any bridge over a river, creek, or rivulet crossing any road or highway on which the public are required to travel" are almost identical with the words of the Act of June 13, 1836, P. L. 551, relating to the erection of bridges at the expense of counties. That act provides that a bridge may be entered as a county bridge when a river, creek or rivulet over which it may be necessary to erect a bridge crosses a public road or highway, and decisions under said act are of material aid to us in the consideration of the words in the present act. In Commonwealth v. Kessler, 222 Pa. 32, the Supreme Court held that under the Act of 1836 "a stream must cross a public road or highway when a bridge is to be erected over it by a county." In Youghiogheny Bridge Case, 182 Pa. 618, it was held that the Act of 1836 referred to highways crossed by rivers. The Supreme Court held that roads and highways not

crossed by rivers and creeks between two adjoining boroughs or townships could not be bridged by the counties. We quote from the opinion in that case: "At the very base of the proceeding there must exist in a reasonable sense at the inception of the proceedings, a highway to be bridged, not one existing in the imagination or on paper. Take, for example, the site of the present suspension bridge between the two boroughs built in 1862. When built, the river crossed at that point an old State road which operated a ferry. Unquestionably this was an actual existing road between two boroughs, and proceedings for a county bridge at that point could have been sustained. Nor do we go so far as to hold that such highway must be a much traveled one, like unto the old State road, whether traveled much or little, it must have an existence, not be a mere projection." In Chartiers Creek Bridge, 37 Pa. Superior Ct. 281, a case under the Act of 1836, Judge BEAVER, in calling attention to the similarity of the Act of March 24, 1905, and the Act of 1836, both of which refer to bridges over streams when the streams cross a public highway, states: "This language refers to the original erection of a bridge." After referring to the substitution of one bridge for another already erected, he proceeds, "at the point where a new bridge is contemplated, there is no highway on either side of the creek. We cannot see, therefore, how the bridge can be said to cross a highway."

The case of Towanda Bridge, 91 Pa. 216, cited by the plaintiff, is not an authority to the contrary. An examination of the opinion of the lower court discloses the fact that there were highways on both sides of the river to be bridged, and the court held that the petitioners were not required to show that a highway had been laid out, not only to but across the river. This presented an entirely different state of facts from the one before us. Here there was a long interval between the bank of the stream and the highways paralleling it. "It (the bridge)

was largely built on either side of the river on private and government property, and there can be no claim in fact that this bridge is part of a public road which crosses a river or part of a public road which the Monongahela river crosses." (Opinion of the lower court.) There seems to have been a fixed idea in the minds of the legislators that in order to have certain bridges declared county bridges, they must have been erected over streams which crossed the highway. These words persistently appear in a number of our acts referring to bridges, being found as far back as the Act of April 6, 1802. We must conclude that the words were inserted for some purpose. The appellant says that the bridge itself is a highway. Certainly, after a bridge is erected it becomes a highway, but the intention of the act is that the river should have crossed the highway previous to the building of the bridge. As the act confers new powers not conferred before, their exercise must be had within the terms of the act, and we may not ignore certain explicit limitations therein, on the plea that the act should be liberally construed. We may not trespass on the domain of the legislature. We may not disregard the plain words of the act, even if an adherence to its provisions may continue a burden upon the public, which it may well be argued should be lifted.

The learned court, in its opinion sustaining the demurrer, entered into a discussion of certain other features of the case, such as the status of the street car company occupying a portion of the bridge, and the fact that the bridge crossed certain railroad tracks. As we think the court arrived at the proper conclusion irrespective of these features, we need not further refer to them.

Judgment affirmed.